

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE ___APR 1 2 2018___

_____
for   CHIEF JUSTICE

This opinion was filed for record

at ___8:00 AM___ on ___April 12, 2018___

_____
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Disciplinary Proceeding Against | ) ) ) | No. 201,639-1 |
| CARLLENE M. PLACIDE, | ) ) | En Banc |
| an Attorney at Law. | ) ) ) | Filed ___APR 1 2 2018___ |

JOHNSON, J.—Attorney Carllene M. Placide appeals the unanimous recommendation of the Washington State Bar Association Disciplinary Board (Board) that she be disbarred from the practice of law. The misconduct charged includes misappropriation, repeated lying, failure to deposit flat fees received from clients into a trust account, failure to deliver property to which a third party was entitled, and charging an unreasonable fee. We uphold the Board's unanimous recommendation and disbar Placide.

## FACTS AND PROCEDURAL HISTORY

Placide was admitted to the practice of law in 1999. In November 2006, Placide joined the law firm of Dorsey & Whitney LLP as a "non-equity" partner

with base yearly compensation of $225,000. Decision Papers (DP) at 51 (Hr'g Officer's Am. Findings of Fact, Conclusions of Law, & Recommendation (AFFCLR)). Placide's practice emphasized labor and employment law and immigration law. Dorsey had a firm policy stating that all compensation received by Dorsey partners, associates, or other attorneys was property of the firm. That policy states, in relevant part:

> Checks for legal services should be made payable to the Firm, and in any instance in which a check for legal or any other services representing compensation which is the property of the Firm is made payable to an individual payee, it should be endorsed immediately by the individual payee to the order of the Firm and delivered to the Finance Department with the Check for Deposit form. Similarly, any cash or other property representing any such compensation should be delivered immediately to the Finance Department with the appropriate identification.

Office of Disciplinary Counsel's (ODC) Ex. A-109, at 20. Placide knew of these policies and agreed to comply with them by signing the offer of employment letter. For several years prior to 2011 and while a partner at Dorsey, she represented individual immigration clients who hired her personally (outside clients) and who paid her directly. She failed to disclose the existence of these clients to Dorsey. Placide attempted to conduct conflict checks, but those attempts were "wholly inadequate." DP at 53 (AFFCLR). She retained the funds she received as compensation from her outside clients instead of turning them over to Dorsey. She represented outside clients on a flat fee basis, with fees and expenses paid in

2

advance. Placide's engagement letters or agreements with outside clients failed to include the language required by RPC 1.5(f)(2) in order to designate such fees as the lawyer's property on receipt. She failed to deposit funds she received from outside clients in a trust account as required by RPC 1.5(f) and RPC 1.15A(c)(2); she did not have an interest on lawyer's trust account and either retained or deposited into a personal bank account all such payments. On at least one occasion, Placide was unable to refund unearned fees to a client because she failed to deposit and hold those funds in a trust account.

Placide occasionally used Dorsey's office space, equipment, e-mail, letterhead, and the time and labor of Dorsey employees when working on outside client matters. She attempted to conceal her representation of outside clients while at Dorsey. In November 2011, Dorsey representatives learned about Placide's outside clients. Dorsey's internal investigation revealed that Placide had received more than $56,700 in fees from outside clients. At a November 8, 2011 meeting with Dorsey representatives, Placide repeatedly denied representing outside clients. Each time the Dorsey administrators presented Placide with an e-mail or other document that showed her contact with outside clients, she would admit to representing that client, but no others. Placide claims that "under the pressure of the moment some of her statements were inaccurate but denies there was any intent to deceive." Opening Br. of Appellant at 4-5.

Dorsey terminated its relationship with Placide around November 14, 2011. The separation agreement shows that Placide agreed to repay Dorsey $50,923 by December 30, 2012, a sum that included $56,700 in fees that Placide received from outside clients and also certain benefits that Placide had already received from Dorsey, less any November partnership income already paid to Placide. Dorsey filed an ethics complaint against Placide, alleging that Placide operated her off-the-books practice from Dorsey's Seattle office, made significant efforts to hide the practice from others in the office, was dishonest, and violated trust account procedures for unearned fees.

Placide did not complete the work she agreed to perform for client P.S., an outside client, before her separation from Dorsey. P.S. paid a $2,500 flat fee to Placide to perform work on an immigration matter. Dorsey attorneys completed the work instead. After learning that other Dorsey attorneys had completed the work, Placide asked P.S. if she should return his fee, and P.S. indicated that he wanted Placide to give the fee to Dorsey. Placide nevertheless did not return those funds to Dorsey, claiming that the funds were covered by the above-referenced separation agreement.

Prior to November 2011, and while still a partner at Dorsey, Placide was in contact with the law firm of Ogletree, Deakins, Nash, Smoak & Stewart regarding potentially leaving Dorsey and joining Ogletree. Although Placide believes she

was terminated by Dorsey at least in part because Dorsey found out about her intention to move her practice to Ogletree, the hearing officer found no evidence that Dorsey was aware of Placide's contacts with that firm. Placide falsely told Ogletree representatives that Dorsey had terminated her because it had learned of her discussions about moving her practice to Ogletree. In December 2011, Placide accepted employment with Ogletree as a shareholder. While Ogletree had no written policy prohibiting shareholders from representing clients in legal matters outside of the firm, it intended and expected its shareholders to provide legal services exclusively for Ogletree clients. The hearing officer found that Placide knew of this expectation but began representing outside clients as she had at Dorsey, and had performed legal services for at least seven outside clients.

Placide received fees equal to at least $10,000 from outside clients while at Ogletree, did not disclose those clients to Ogletree, and did not maintain a trust account to hold those outside clients' payments. She deposited all fees into her personal bank account. She did not perform conflict checks before representing those clients; no evidence exists that her client engagement letters complied with RPC 1.5(f)(2). Placide did not discuss with her outside clients, either at Dorsey or Ogletree, whether their fees would be placed in a trust account, where the funds would be deposited, or the fact that their flat fee arrangement did not alter the client's right to terminate the client-lawyer relationship. In November 2012,

Dorsey notified Ogletree that it had filed an ethics complaint against Placide. When Ogletree's general counsel contacted Placide to discuss the Dorsey ethics complaint, Placide repeatedly lied, stating that Dorsey had approved her representation of outside clients and that Dorsey terminated her because it became aware of the discussions with Ogletree regarding potential employment.

Ogletree requested that Placide provide a copy of her Dorsey separation agreement, reviewed Placide's Ogletree e-mails, and discovered that Placide had performed legal services for at least seven or eight outside clients. Ogletree representatives then met with Placide without disclosing the purpose of the meeting in advance. At that meeting, Placide acknowledged that she knew she was prohibited from representing outside clients while at Ogletree, initially denied representing outside clients while at Ogletree, and then admitted to representing outside clients when shown documentary evidence.

In January 2013, Placide and Ogletree entered into a settlement agreement, in which Placide promised to pay to Ogletree a specified amount based on the payments she received from her outside clients. The hearing officer noted that Placide had made no payments pursuant to the agreed-upon schedule as of the time of the disciplinary hearing.

The ODC charged Placide with eight counts of misconduct:

Count 1: "By unlawfully appropriating funds belonging to Dorsey, Respondent violated RPC 8.4(b) by committing crimes of theft (RCW 9A.56.040 and/or RCW 9A.56.050 and/or RCW 9A.56.060), and/or violated RPC 8.4(c), and/or violated RPC 8.4(i)."

Count 2: "By misrepresenting the extent of her 'off-the-books' practice to Dorsey personnel, Respondent violated RPC 8.4(c)."

Count 3: "By failing to deposit advance flat fees in trust, as is required in the absence of a flat fee agreement that conforms with RPC 1.5(f)(2), Respondent violated RPC 1.15A(c)(2)."

Count 4: "By failing to return unearned portions of [client P.S.]'s fee on termination of representation and/or in failing to promptly return unearned portions of Client A's fee, Respondent violated RPC 1.15A(f) and/or RPC 1.16(d)."

Count 5: "By keeping $2,500 in legal fees paid to her by [client P.S.] without performing the work she agreed to perform on his behalf, Respondent charged an unreasonable fee in violation of RPC 1.5(a)."

Count 6: "By unlawfully appropriating funds belonging to Ogletree, Respondent violated RPC 8.4(b) by committing crimes of theft (RCW 9A.56.040 and/or RCW 9A.56.050 and/or 9A.56.060), and/or violated RPC 8.4(c), and/or violated RPC 8.4(i)."

Count 7: "By misrepresenting to Ogletree that she did not represent outside clients while employed at Ogletree and/or the number of outside clients she represented while at Ogletree, Respondent violated RPC 8.4(c)."

Count 8: "By failing to deposit advance flat fees in trust, as is required in the absence of a flat fee agreement that conforms with RPC 1.5(f)(2), Respondent violated RPC 1.15A(c)(2)."

DP at 37-38, 42, 43 (First Am. Formal Compl. (FAFC)).

Following the disciplinary hearing, Hearing Officer Carl Carlson entered his findings of fact, conclusions of law, and recommendation, which he later amended. The hearing officer found that Placide was not a credible witness in part based on her denying any knowledge of the Dorsey policies about representing outside clients or turning all fees for legal services over to the firm, her belief that she was permitted to perform legal services for outside clients while at Ogletree, her efforts to conceal those clients from both firms, and her denials of such representation when questioned by Dorsey and Ogletree representatives.

For counts 1 and 6 (theft), the hearing officer concluded that Placide's legal services she provided to outside clients did not become "'property of another,'" and although her conduct in performing services for outside clients "breached her contractual and fiduciary duties to her respective law firms," it did not constitute "the theft of her services." DP at 68, 69 (AFFCLR). The hearing officer also found that "the outside clients . . . intended to hire [Placide] personally" and "intended to pay their fees directly to [Placide] . . . *with one exception*," and that although the firms "owned the contractual right to be paid all of the fees," the firms "did not own the fees themselves before they were turned over to the firm." DP at 69 (AFFCLR) (emphasis added). The hearing officer concluded that Placide's "receipt and retention of fees for her legal services to outside clients breached her

contractual obligations and fiduciary duties to Dorsey and Ogletree, but did not constitute the crime of theft." DP at 70 (AFFCLR).

As related to the exception in count 1 (theft from Dorsey), the hearing officer concluded that Placide "acted knowingly in committing the crime of theft by exerting unauthorized control over the $2,050 of client P.S.'s fee which was not covered by Respondent[']s Settlement Agreement with Dorsey, and by appropriating $2,050 of that fee which had been misdelivered to her." DP at 73 (AFFCLR). The hearing officer concluded that standard 5.1[1] of the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) applied to Placide's actions, but concluded that the presumptive sanction is suspension over disbarment per ABA *Standards* std. 5.12 because Placide's "failure to turn $2,050 of Client P.S.'s fee over to Dorsey [could not] be characterized as 'serious criminal conduct.'" DP at 74 (AFFCLR).

For counts 1, 2, 6, and 7 (dishonesty, deceit, misrepresentation), the hearing officer concluded that Placide acted knowingly in committing conduct involving

---

[1] ABA *Standards* std. 5.11 states that "[d]isbarment is generally appropriate when: (a) a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, misappropriation, extortion, or theft . . . ; or (b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice."

ABA *Standards* std. 5.12 states that "[s]uspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice."

dishonesty, deceit, and misrepresentation. The hearing officer concluded that Placide's conduct caused Dorsey and Ogletree actual and potential injury and that Placide's "ongoing pattern of dishonesty, deceit and misrepresentations was so extensive and consistent that it 'seriously adversely reflects on the lawyer's fitness to practice.'" DP at 76 (AFFCLR). The hearing officer applied ABA *Standards* std. 5.11(b) in concluding that the recommended sanction for these violations is disbarment.

For counts 3 and 8 (trust account violations), the hearing officer found that Placide, by failing to deposit client flat fee payments into a trust account and not providing clients with the information and disclosures required by RPC 1.5(f)(2), was negligent and violated RPC 1.15A(c)(2). The hearing officer concluded that Placide's violations caused clients actual injury (inability to refund unearned fees) and potential injury (exposure to risk of inability to timely refund unearned fees). The hearing officer applied ABA *Standards* std. 4.1 and concluded that the presumptive sanction for these violations is a reprimand.

For count 4 (failure to return property), the hearing officer concluded that Placide knowingly failed to deliver $2,050 of client P.S.'s fee to Dorsey after client P.S. told Placide to do so, causing Dorsey actual injury and thereby violating RPC 1.15A(f). The hearing officer further concluded that ABA *Standards* std. 4.12

10

(dealing improperly with client property) applied, and that the presumptive sanction for this violation is suspension.

For count 5 (charging unreasonable fee), the hearing officer concluded that Placide knowingly retained client P.S.'s $2,500 in fees without performing the work to earn the fees, thereby charging an unreasonable fee in violation of RPC 1.5(a). The hearing officer applied ABA *Standards* std. 7.2 in concluding that the presumptive sanction is suspension.

The hearing officer considered the following aggravating factors set forth in ABA *Standards* std. 9.22: (1) dishonest or selfish motive, (2) pattern of misconduct, (3) multiple offenses, (4) false statements or other deceptive practices during the disciplinary process, (5) refusal to acknowledge wrongful nature of conduct, (6) substantial experience in the practice of law, and (7) indifference to making restitution. The hearing officer concluded that the first factor considered—dishonest or selfish motive—did not apply. The hearing officer found (1) Placide's absence of a prior disciplinary record and (2) her timely good faith effort to make restitution as applied to count 5 only, to be mitigating factors.

The hearing officer recommended that Placide be disbarred. The Board voted unanimously to adopt the hearing officer's decision. The Board noted that "the existence of a contractual or fiduciary duty between Placide and the partners at Dorsey and/or Ogletree [was] not necessary to establish the violations and to the

Board's decision." Bd. Order Adopting Hr'g Officer's Decision (Board Order) at 1-2. The Washington State Bar Association (WSBA) then petitioned this court for an interim suspension of Placide under ELC 7.2(a)(2), which we granted.

Placide now appeals. In her opening brief, Placide makes 11 assignments of error.

## ISSUES

1.     Does Placide's conduct identified in counts 1 and 6 qualify as an "intrapartnership dispute" not susceptible to the Board's or this court's disciplinary authority?

2.     Did the Board correctly determine that Placide knew about Dorsey's and Ogletree's policies regarding representation of outside clients?

3.     Did the Dorsey separation agreement release Placide from her obligation to repay $2,050 she received from client P.S. for legal work not performed?

4.     Did the Board correctly determine that RCW 9A.56.020(1) applies to the theft at issue in count 1?

5.     Did the Board correctly determine that under RPC 1.5(a), Placide charged an unreasonable fee by never performing legal services client P.S. was entitled to receive?

6.     Did counts 1 and 6 give Placide sufficient notice of the charges against her?

7.     Did the Board correctly determine that Placide engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation regardless of the existence of policy manuals or firm policies at Dorsey and Ogletree?

8.     Was the Board's recommendation of disbarment for counts 2 and 7 disproportionate?

12

9. Does the challenged aggravating factor of false statements or other deceptive practices during the disciplinary process apply?

10. Did the hearing officer properly exclude Placide's proposed testimony about her conversation with the "Ethics Hotline" under APR 19(e)(5)?

11. Did the hearing officer apply the correct standard to determine the presumptive sanctions for counts 1, 2, 6, and 7?

## ANALYSIS

### Standard of Review

This court is the definitive authority for attorney discipline. *In re Disciplinary Proceeding Against Kuvara,* 149 Wn.2d 237, 246, 66 P.3d 1057 (2003). Unchallenged findings of fact are verities on appeal. *In re Disciplinary Proceeding Against Marshall,* 160 Wn.2d 317, 330, 157 P.3d 859 (2007) (*Marshall* I). Where challenged, this court will uphold those findings provided they are supported by substantial evidence. *In re Disciplinary Proceeding Against Guarnero,* 152 Wn.2d 51, 58, 93 P.3d 166 (2004). We recognize "that the hearing officer is in the best position to determine factual findings regarding a lawyer's state of mind and his [or her] decision is given 'great weight' on review." *In re Disciplinary Proceeding Against Cramer,* 165 Wn.2d 323, 332, 198 P.3d 485 (2008) (quoting *In re Disciplinary Proceeding Against Longacre,* 155 Wn.2d 723, 744, 122 P.3d 710 (2005)). We review conclusions of law de novo, and when the Board is unanimous with regard to the recommended sanction, we will uphold its

13

decision absent a clear reason for departure. *In re Disciplinary Proceeding Against Fossedal*, 189 Wn.2d 222, 233, 399 P.3d 1169 (2017).

1. Placide's conduct does not qualify as an intrapartnership dispute, and her reliance on *In re Disciplinary Proceeding Against Rice*[2] to characterize it as such is unavailing

Placide argues that her conduct at Dorsey and Ogletree stemmed from an "intrapartnership accounting" dispute and argues that counts 1 and 6 should be dismissed because "[b]ar proceedings are not the place for unhappy partners and shareholders to fight about their contractual differences which was the point of *Rice*." Opening Br. of Appellant at 15. She asserts that there is nothing inherently improper about a partner/shareholder having outside clients and keeping the fees.

ODC responds that the inquiry's focus is on whether Placide's conduct "violated the RPC, not whether it resulted in a dispute with her law partners." Answering Br. of ODC at 22. It cites to *In re Disciplinary Proceeding Against Selden*[3] as well as out-of-state case law for the proposition that this court and courts in other states have adjudicated similar violations and disbarred lawyers for misappropriating funds from their law firms.

In *Rice*, a "member" of a law firm that was organized as a public service corporation was suspended by the Board for "allegedly appropriat[ing] legal fees

---

[2] 99 Wn.2d 275, 661 P.2d 591 (1983).
[3] 107 Wn.2d 246, 728 P.2d 1036 (1986) (plurality opinion).

for his personal use without accounting for use of those funds to his law firm partners." *Rice*, 99 Wn.2d at 275-76. Rice's alleged misconduct involved taking "monies paid to him as legal fees for work he had done for his personal use and fail[ing] to account to the law firm for the receipt of these funds." *Rice*, 99 Wn.2d at 276. This court disagreed with the Board's recommendation of suspension,[4] citing several factors: (1) the case did not involve "misappropriation of client funds" but rather "internal problems of a law firm," (2) there was "no showing that Mr. Rice demonstrated an intent to permanently deprive the partnership of the disputed funds," and (3) "according to the record . . . , his behavior was not out of character with the nature of the firm's accounting procedures." *Rice*, 99 Wn.2d at 277-79. We noted that Rice "acknowledged the truth of his takings, but maintained that he intended to account for all the funds" at a later time. *Rice*, 99 Wn.2d at 277.

Placide relies on our pronouncement in *Rice* that "[t]his court under no circumstances should involve itself in intrapartnership accounting disputes." *Rice*, 99 Wn.2d at 279. Placide's actions, however, are readily distinguishable from the actions of the partner in *Rice*. Here, unlike in *Rice*, Placide did, in fact, permanently deprive Dorsey and Ogletree of at least some of the disputed funds, and the record amply demonstrates that her actions in taking on outside clients and

---

[4] Rice was alleged to have violated two of the former Discipline Rules for Attorneys (DRA): former DRA 1.1(a) (1982) (act involving moral turpitude, dishonesty or corruption) and former DRA 1.1(i) (1982) (conduct involving dishonesty, fraud, deceit, or misrepresentation).

keeping those client fees were out of character with the nature of the firms' accounting procedures. Placide does not show that she intended to account for all the funds and has yet to do so. The findings pertaining to the charged conduct in counts 1 and 6 are supported by substantial evidence and bear no resemblance to the intrapartnership dispute in *Rice*.

ODC cites *Selden* for the proposition that we have in fact adjudicated similar violations of the Rules of Professional Conduct. At issue in *Selden* was "the appropriate sanction for a lawyer who misappropriated funds from his law firm." *Selden*, 107 Wn.2d at 248. Selden was an associate with a Tacoma law firm when he began keeping some of the client checks made payable to him and depositing them into his own bank account in violation of the law firm's accounting procedures. The firm discovered this practice when several clients protested being billed twice. When confronted, Selden initially "tried to bluff but finally admitted [to] taking some money." *Selden*, 107 Wn.2d at 249. He later repaid the firm in full and admitted that "he knew what he had done was wrong," but "stole yet additional funds after his firm discovered his misappropriations and fired him." *Selden*, 107 Wn.2d at 250, 256. This court concluded that "it [was] necessary to disbar[5]

---

[5] It is also noteworthy that in *Selden*, where we disbarred the attorney, the hearing officer recommended a 60-day suspension, which the Board adopted, with one member abstaining and two members dissenting and urging a 120-day suspension instead. *Selden*, 107 Wn.2d at 250.

[Selden] to protect the integrity of the legal profession and preserve the public's confidence in it." *Selden*, 107 Wn.2d at 256.

We distinguished *Rice* and reiterated that in that case, the relevant concerns were the lack of a finding that the attorney there intended to permanently deprive the law firm of the funds and the fact that the attorney's behavior "was not out of character with that law firm's loose accounting procedures." *Selden*, 107 Wn.2d at 254. We also stated that *Rice* "stands for the proposition that *when there has been no finding of fraud*, this court will not entertain an accounting action in the guise of a disciplinary proceeding." *Selden*, 107 Wn.2d at 255. In *Selden*, we further noted that although Selden appeared to imply that "under *Rice*, a partner may take funds from his or her firm with no danger of retribution," that issue was not before us, declining to address it. *Selden*, 107 Wn.2d at 255 n.22. We now hold that engaging in extensive and repeated theft of firm funds is sanctionable attorney conduct, regardless of whether an attorney is an associate, a partner, or a shareholder. ODC correctly notes that under Rule 1.2 of the Rules for Enforcement of Lawyer Conduct (ELC), Placide is "'subject to the disciplinary authority of this jurisdiction'" as an attorney "'admitted to practice in this jurisdiction.'" Answering Br. of ODC at 24 (quoting ELC 1.2). Placide's conduct is therefore within the purview of the attorney disciplinary proceedings.

2. The record supports the hearing officer's determination that Placide knew about Dorsey and Ogletree policies regarding representation of outside clients

Placide next contends that the hearing officer erroneously determined that the Dorsey and Ogletree firm policies regarding representation of outside clients created a fiduciary relationship, which required Placide to turn over fees earned from outside clients. We agree with the Board's unanimous determination that the existence of a contractual or fiduciary duty between Placide and the partners at Dorsey and/or Ogletree is not necessary to establish the violations.

Placide does appear to challenge, however, the hearing officer's findings that "she had actual knowledge" of the Dorsey policies or any knowledge "of the expectations at Ogletree" regarding representation of off-the-books clients. Opening Br. of Appellant at 16, 18. "An attorney's knowledge may be inferred from the facts." *In re Disciplinary Proceeding Against Preszler*, 169 Wn.2d 1, 20, 232 P.3d 1118 (2010). There appears to be substantial evidence in the record of Placide's knowledge of the policies, practices, and expectations at Dorsey and Ogletree, and even if there are several reasonable interpretations of the evidence, evidence is substantial if it reasonably supports the finding. *In re Disciplinary Proceeding Against McGrath*, 174 Wn.2d 813, 818, 280 P.3d 1091 (2012). Here, Placide had Dorsey policy manuals, which explicitly stated that all compensation received by any lawyer for professional services was the property of Dorsey. ODC

Ex. A-109. Dorsey's partner manual similarly states that "all compensation received by any partner for professional services is the property of the Partnership and shall be turned over to the Partnership." ODC Ex. A-110. Kenneth Jorgensen, an ethics partner at Dorsey, testified that "for most partners—frankly even probably for associates—it goes without saying they understand that the fees belong to the firm, and they are not to be representing clients outside the firm." 1 Verbatim Report of Proceedings (VRP) at 58-59. There was testimony that Placide "was probably the only lawyer in the whole office that told her secretary not to open packages that came for her," and that she took extraordinary measures to hide her in-office activities from other Dorsey staff members. 1 VRP at 86; *see* 2 VRP at 520. For example, Placide requested to have a printer installed in her office, which at the time was highly unusual for Dorsey, whose lawyers' typical practice was to print the document to a shared printer location and then retrieve it or have staff print the document. Placide refused to allow her secretary to organize her office. Based on this evidence, the hearing officer could reasonably infer, and did infer, that Placide took measures to conceal her off-the-books clients from Dorsey. Likewise, from the fact that Placide had repeatedly lied[6] about representing outside clients during her November 8, 2011, meeting with the Dorsey representatives, the

---

[6] Each time the Dorsey administrators presented Placide with an e-mail or other document that showed her contact with outside clients, she would admit to representing that client, but no others.

hearing officer could reasonably infer that Placide knew that what she was doing was prohibited.

Similarly, at Placide's January 9, 2013, meeting with the Ogletree representatives, she told the representatives that at Dorsey she was expressly authorized to represent private clients, expressly admitted that she knew it was wrong to represent off-the-books clients while at Ogletree and not turn over her fees to the firm, and then repeatedly lied about representing private outside clients while at Ogletree. ODC argues that the hearing officer could reasonably infer from this testimony that Placide knew what she was doing was prohibited. We agree and uphold the hearing officer's findings regarding Placide's knowledge of the existence of the Dorsey and Ogletree policies addressing representation of off-the-books clients as supported by substantial evidence.

3. The Dorsey separation agreement did not release Placide from her obligation to repay $2,050 she received from client P.S. for legal work she did not perform

Placide next asserts that her "[s]ettlement" agreement with Dorsey resolved all "client fee issues" and that because she had a "good faith belief that the firm did not have a claim on [those] funds," she did not wrongfully exert unauthorized control over the money. Opening Br. of Appellant at 3, 27. We disagree and affirm the hearing officer's conclusion that the separation agreement did not release Placide from her obligation to repay the funds.

The hearing officer concluded that Placide committed theft[7] and violated RPC 8.4(b) by misappropriating the $2,050 paid to her by client P.S. ODC points out that the hearing officer's conclusion that Placide committed theft, thereby violating RPC 8.4(b), is supported by findings of fact 49-52, and that those findings are unchallenged and therefore verities on appeal. The hearing officer established that client P.S. paid Placide $2,050 as a retainer and $450 as a consultation fee to represent him in an immigration matter, for a $2,500 total fee. Placide never completed the work; Dorsey completed the work instead, for which it received no compensation. P.S. subsequently told Placide that Dorsey had completed the work for him and that she should contact Dorsey about returning the unearned fees he had paid her. Placide never returned the unearned fees. She now relies on the separation agreement to argue that Dorsey had given up any claim to the fees once it signed the separation agreement.

The "Separation Agreement and General Release" provides, in relevant part:

> *Effective upon payment of the sums specified* in this Agreement, Dorsey . . . hereby releases and discharges Placide . . . from all liability for all claims Dorsey may have against Placide arising from or relating to any fact or event occurring prior to the time Dorsey signed this Agreement.

---

[7] Under RPC 8.4(b), it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." The hearing officer relied on RCW 9A.56.020(1) for the definition of "theft." The applicability of the statute is discussed *infra* in Section 4 of this opinion.

ODC Ex. A-129, at 1-2 (emphasis added). Placide never paid the sums specified in the agreement and therefore cannot rely on its existence to argue that "Count 1 as it relates to the P.S. fees must be dismissed since Placide did not misappropriate the funds" and that "Count 4 cannot stand since the premise that the funds belonged to a third party (Dorsey) is not accurate." Opening Br. of Appellant at 27, 28. Furthermore, the release of a claim for theft, or for any other wrongful act, alone, does not mean that the theft or other wrongful act did not occur. Placide never informed Dorsey of her receipt of the P.S. fee, and we uphold the hearing officer's determination that her belief that she was excused by the separation agreement from turning the money over to Dorsey was not reasonable or credible.

4. The Board correctly determined that RCW 9A.56.020(1) applies to the conduct charged in count 1

Placide next argues that she did not "wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services" under RCW 9A.56.020(1)(a). She also argues that she did not "appropriate lost or misdelivered property or services of another, or the value thereof, with intent to deprive him or her of such property or services" under RCW 9A.56.020(1)(c).

In addition to the separation agreement, discussed *supra*, Placide points to the fact that "P.S. told Placide that he did not own the funds since he had received

the services he asked for"; that P.S. "would have no way of knowing what kind of severance agreement Placide and Dorsey had"; and that "Placide believed that once P.S. gave up any claim of ownership it then became a matter of looking to the Separation Agreement which provided that she did not owe Dorsey anything." Opening Br. of Appellant at 26. Essentially, she attacks the hearing officer's determination on the basis that the $2,050 was never abandoned or misdelivered by P.S., and on the basis of lack of any intent on Placide's part to deprive Dorsey of the fee.

As previously stated, findings of fact will not be overturned based simply on an alternative explanation of the facts or on a version of the facts previously rejected by the hearing officer. *In re Disciplinary Proceeding Against Marshall*, 167 Wn.2d 51, 67, 217 P.3d 291 (2009) (*Marshall* II). Even if there are several reasonable interpretations of the evidence, it is substantial if it reasonably supports the finding. *McGrath*, 174 Wn.2d at 818. The hearing officer found Placide not to be a credible witness. Placide's contention that she did not intend to deprive Dorsey of the $2,050 fee that she did not earn and that P.S. suggested she contact Dorsey about returning is an alternative explanation that, although plausible, does little to counter the substantial evidence at issue. The evidence, as discussed *supra*, points to the fact that the hearing officer's factual determinations were correct. The hearing officer's legal conclusion, reviewed de novo, that Placide wrongfully

exerted unauthorized control over Dorsey's property or appropriated misdelivered property belonging to Dorsey is therefore sound.

The remaining issue, however, is whether, for purposes of RCW 9A.56.020(1)(a) and (c), the requisite element of *intent* has been established. Placide argues that she could not have *intended* to deprive Dorsey of the P.S. fee for purposes of RCW 9A.56.020(1)(a) and (c) and that therefore ODC failed to prove she had engaged in theft. Alternatively, Placide claims she is entitled to the defense provided by RCW 9A.56.020(2)(a), which states that "In any prosecution for theft, it shall be a sufficient defense that: . . . The property or service was appropriated openly and avowedly under a claim of title made in good faith, even though the claim be untenable."

Placide contends that "she claimed the funds with the full knowledge of them by firm" and that she "claimed [the funds] under the good faith belief that the firm did not have a claim on the funds." Br. of Appellant at 27.

It appears that the hearing officer did not specifically examine the issue of whether Placide *intended* to "wrongfully obtain or exert unauthorized control" or *intended* to "appropriate lost or misdelivered property" for purposes of finding that she committed a crime of theft under RCW 9A.56.020(1)(a) and (c). To the extent this was a legal determination, we conclude that that was error. The statutory provision that the hearing officer used to conclude that Placide committed a crime

of theft clearly and explicitly lists "intent" as an element of the crime. The hearing officer omitted entirely that portion of the statutory language when quoting the statute he later relied on to conclude that Placide's actions constituted a criminal act of theft.

"A person acts with intent or intentionally when acting with the objective or purpose to accomplish a result that constitutes a crime." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.01 (4th ed. 2016). It is unclear from the record whether the hearing officer's findings of fact and the record would support a factual finding that Placide acted intentionally as provided under RCW 9A.56.020(1)(a) and (c) and the resulting legal finding that Placide committed a crime of theft. Without citing to the record, ODC argues that "[t]he hearing officer could reasonably infer, and did infer, that [Placide] kept the money with intent to deprive another of that money," and that "[i]t is abundantly clear . . . that the hearing officer found [Placide's] dishonest and deceitful conduct to be intentional." Answering Br. of ODC at 38, 45. While the hearing officer could have reasonably inferred that Placide was "acting with the objective or purpose to accomplish a result that constitutes a crime," he did not explicitly do so. *See* DP at 70 (AFFCLR). Because we "review conclusions of law de novo and will uphold them if they are supported by the findings of fact," *Marshall* I, 160 Wn.2d 330, we conclude that the hearing officer's findings of fact as to the

intentional nature of the alleged criminal act are insufficient or missing and decline to uphold the hearing officer's legal conclusion that Placide's retention of the $2,050 fee constituted theft.

ODC argues, however, that a hearing officer's recommendation can be affirmed on any grounds supported by the record, citing to *State v. Costich*, 152 Wn.2d 463, 98 P.3d 795 (2004).[8] ODC now argues that although the hearing officer determined otherwise, ODC did, in fact, prove that Placide committed theft with respect to *all* the funds she misappropriated from Dorsey and Ogletree, and that the hearing officer's conclusion otherwise was in error.

ODC first argues that the hearing officer's "conclusions rest on the misconception that the thefts at issue in Counts 1 and 6 are thefts of [Placide's] *services*." Answering Br. of ODC at 42. But the hearing officer explicitly discusses "[Placide's] receipt and retention of fees" as a separate ground the hearing officer considered in determining whether or not Placide committed theft. DP at 70 (AFFCLR). Therefore, the hearing officer considered both the theft of services and the theft of fees in arriving at the challenged conclusions.

ODC next argues that the hearing officer's "conclusions rest on the misconception that the phrase 'property . . . of another' in RCW 9A.56.020(1)

---

[8] "This court may affirm a lower court's ruling on any grounds adequately supported in the record." *Costich*, 152 Wn.2d at 477 (citing *In re Marriage of Rideout,* 150 Wn.2d 337, 358, 77 P.3d 1174 (2003)).

'cannot be intended' to cover property that has not yet been delivered to the party entitled to receive it." Answering Br. of ODC at 42 (alteration in original) (citing DP at 68, 69 (AFFCLR)). ODC relies on RCW 9A.56.010(23)(b) and (c) and states that theft may be accomplished not only by taking the property or services of another, but also by "appropriating property to one's own use where that property has never been delivered to the party entitled to receive it." Answering Br. of ODC at 43. Because ODC is in effect challenging the hearing officer's legal conclusion based on an interpretation of a statute, we review the hearing officer's legal determination de novo.

We agree with ODC and conclude that Placide's retention of fees from outside clients, regardless of whether those clients intended to pay them directly to her, constitutes "theft" as defined by RCW 9A.56.020(1)(a). As ODC correctly points out, "wrongfully obtains" or "exerts unauthorized control" are defined for purposes of chapter 9A.56 RCW as not only "tak[ing] the property or services of another," RCW 9A.56.010(23)(a), but also:

> (b) *Having any property or services in one's possession*, custody or control as bailee, factor, lessee, pledgee, renter, servant, *attorney*, agent, employee, trustee, executor, administrator, guardian, or officer of any person, estate, association, or corporation, or as a public officer, or person authorized by agreement or competent authority to take or hold such possession, custody, or control, *to secrete, withhold, or appropriate the same to his or her own use or to the use of any person other than the true owner or person entitled thereto*; or

27

> (c) *Having any property or services in one's possession, custody, or control as partner, to secrete, withhold, or appropriate the same to his or her use* or to the use of any person other than the true owner or person entitled thereto, where the use *is unauthorized by the partnership agreement.*

RCW 9A.56.010(23) (emphasis added). The unambiguous language of the statute suggests that a person may commit theft while possessing, having custody, or control of property such as client fees, as an attorney or a partner, and appropriating such property to one's own use even where such property has never been delivered to the party entitled to receive it. Therefore, the hearing officer's legal conclusion as to Placide's retention of the fees she received from outside clients was incorrect. Any compensation received became the property of Dorsey per the language of Dorsey's policies, i.e., that "'all compensation received by any Dorsey partner, associate, or other attorney . . . [was] property of the firm.'" DP at 51 (AFFCLR); *see* ODC Ex. A-109. We conclude that Placide's actions meet the legal definition of "wrongfully obtains" or "exerts unauthorized control" under RCW 9A.56.020(1)(a) as to her retention of the fees paid to her by her off-the-book clients while Placide was a partner at Dorsey, as there was an explicit policy or agreement. Although there was no similar explicit agreement or provision with regard to Ogletree, we nevertheless also conclude that Placide's actions meet the legal definition of "wrongfully obtains" or "exerts unauthorized control" under

28

RCW 9A.56.020(1)(a) as to her retention of the fees paid to her by her off-the-book clients while Placide was a shareholder at Ogletree as well.

However, similar to the P.S. $2,050 fee discussed *supra*, the hearing officer never explicitly concluded that Placide intended to deprive Dorsey of the fees she received from the outside clients. Unlike the $2,050 fee, because the hearing officer found that Placide "intentionally mislead Dorsey as to the amounts she had received" from her outside clients and that a clear preponderance shows that Placide "was aware of Dorsey's [fee] policy" yet took steps to conceal those fees and clients, as well as "intended to retain [the Ogletree] funds personally, without disclosing them to Ogletree," the hearing officer could have reasonably concluded that Placide acted intentionally. DP at 56, 51, 62 (AFFCLR). Therefore, as a matter of law, Placide committed "theft" as defined in RCW 9A.56.020(1)(a) and thus violated RPC 8.4(b) as charged in counts 1 and 6.

> 5. The hearing officer correctly determined that under RPC 1.5(a), Placide charged an unreasonable fee by never performing legal services client P.S. was entitled to receive

Placide next argues that the "finding of violation at Count 5 is based on the premise that Placide charged an excessive fee since she kept the entire $2,500 P.S. fee even though she did not do $2,500 worth of work." Opening Br. of Appellant at 28. Placide fails to rebut meaningfully the hearing officer's findings of fact or conclusions of law on this point. She appears to contend that Dorsey had no claim

to the funds, even though the fact that Dorsey's lawyers completed the work on P.S.'s matter is unchallenged. The hearing officer correctly determined that while Placide did offer to return the fee to P.S., who declined the offer in favor of Dorsey, Placide knew that the fee had not been earned by her, and the offer to return the fee, alone, did not satisfy her obligation not to charge or to collect an unreasonable fee. The hearing officer's conclusion that Placide therefore collected $2,500 in legal fees from client P.S. is correct.

It appears from the record, however, that $450 of the fee was referred to in Placide's engagement letter to P.S. as an "advanced paid consultation fee." ODC Ex. A-102, at 1. The record indicates that Placide did consult P.S. *See* 3 VRP at 724 (P.S. testifying that Placide "definitely did the consultation"). The record also indicates that the rest of the work was performed by the Dorsey lawyers. We conclude that substantial evidence in the record supports the finding only as to the $2,050 portion of the fee retained by Placide of the amount she charged P.S. We nevertheless uphold the hearing officer's legal conclusion that her retention of the unearned portion of the fee violates RPC 1.5(a) as a charge of an unreasonable fee for the work she never performed.

6. Counts 1 and 6 gave Placide sufficient notice of the charges against her

Placide next contends that "Counts 1 and 6 give her no notice much less clear and specific charges regarding ongoing dishonesty by performing legal

services for outside clients and concealing those receipts from the firm" because "they were not charged." Opening Br. of Appellant at 30. Specifically, Placide argues that "those counts were limited to *unlawful* appropriation of fees in violation of RPC 8.4(c) so any findings of violations of Counts 1 and 6 other than the P.S. fees were not charged and cannot serve as the basis of any rules violation." Opening Br. of Appellant at 30-31. Placide's argument appears to stem from the fact that the conduct charged in counts 1 and 6 was "committing crimes of theft." DP at 37, 42 (FAFC). She argues she has a due process right to be notified of clear and specific charges against her and to be afforded an opportunity to anticipate, prepare, and present a defense, citing to our decision in *In re Disciplinary Proceeding Against Romero*, 152 Wn.2d 124, 94 P.3d 939 (2004).

As we have previously stated, "ELC 10.3(a)(3) explains [that the] 'formal complaint must state the respondent's acts or omissions in sufficient detail to inform the respondent of the nature of the allegations of misconduct.'" *Marshall I*, 160 Wn.2d at 340. The formal complaint at issue is replete with specific detail as to the respondent's acts or omissions regarding acts of dishonesty, deceit, and misrepresentation.[9] Furthermore, even though the wording of the language of counts 1 and 6 is not ideal, it puts Placide on notice as to her conduct regarding

---

[9] *See, e.g.*, DP at 34, 35 (FAFC) ("Respondent made the misrepresentation to Dorsey personnel to conceal from them the full extent of her 'off-the-books' practice." "Respondent intentionally misappropriated the $56,700 knowing that she was not entitled to the funds.").

unlawfully appropriating funds and violating RPC 8.4(c) in so doing. Including

RPC 8.4(c), of course, necessarily gives Placide sufficient notice as to the nature of

the allegations per its very language: that "[i]t is professional misconduct for a

lawyer to: . . . engage in conduct involving dishonesty, fraud, deceit or

misrepresentation." Placide was properly notified of the charges against her

regarding dishonesty, deceit, and misrepresentation.

7.    The hearing officer correctly determined that Placide engaged in
conduct involving dishonesty, fraud, deceit, or misrepresentation regardless of the
existence of policy manuals or firm policies at Dorsey and Ogletree

Placide next argues that the Dorsey and Ogletree policies, manuals, and

intentions and expectations regarding partners and shareholders providing legal

services exclusively for the firms' clients "did not create a fiduciary duty which

required Placide to be 100% accurate when she had her meetings with the firms."

Opening Br. of Appellant at 3. As previously stated, the Board unanimously

adopted the hearing officer's decision and recommendation, noting that "the

existence of a contractual or fiduciary duty between Placide and the partners at

Dorsey and/or Ogletree is not necessary to establish the violations and to the

Board's decision." Board Order at 1-2.

The hearing officer's determination that Placide repeatedly and insistently

lied to Dorsey and Ogletree representatives when asked about the extent of her

legal services for outside clients, as well as the amount of fees she received for

those services, is supported by substantial evidence in the record. Such evidence includes testimony by Dorsey representatives Kenneth Jorgensen, Michael Droke, and Kelli Kohout, and Ogletree representatives Charles Baldwin and Christopher Mixon, that amply supports the hearing officer's conclusions. At both meetings, when firm representatives confronted Placide with an e-mail or other document that showed her contact with outside clients, she would admit to representing that client, but no others, essentially, as the hearing officer concluded, repeatedly and insistently lying about the extent of her off-the-books practice and the amount of fees received.

Placide's alternative explanation that she was flustered and pressured in these surprise meetings is an alternative explanation at best and a continued effort to mislead at worst. As previously stated, findings of fact will not be overturned based simply on an alternative explanation of the facts or on a version of the facts previously rejected by the hearing officer. *Marshall* II, 167 Wn.2d at 67. Even if there are several reasonable interpretations of the evidence, that evidence is substantial if it reasonably supports the finding, and circumstantial evidence is as good as direct evidence. *McGrath*, 174 Wn.2d at 818. We therefore uphold the Board's determination as to counts 2 and 7. We expressly reject Placide's remaining arguments that an attorney can freely mislead and lie because she did

"not owe a duty of honesty of some sort," and that "no . . . contractual or expectation duty" or "fiduciary duty" existed. Opening Br. of Appellant at 33-34.

   8. The hearing officer's recommendation of disbarment for counts 2 and 7 was not disproportional

Placide next argues that the hearing officer's recommendation of disbarment for counts 2 and 7 relating to lack of candor is "excessively disproportional compared to the *Christopher*[10] case." Opening Br. of Appellant at 4. Placide complains that in *Christopher*, the attorney "was found to have been dishonest when she gave very clear testimony under oath in a trial," but that although "[s]he was not found guilty of perjury," she "was found to have nonetheless not been honest on the stand." Opening Br. of Appellant at 36-37. Placide essentially claims that because here she lied not under oath but in private meetings, "[a] recommendation of disbarment is wildly disproportional," and instead a reprimand is the appropriate sanction. Opening Br. of Appellant at 37.

In reviewing proportionality, "we analyze whether a presumptive sanction is proper by comparing the case at hand with other similarly situated cases in which the same sanction was approved or disapproved." *In re Disciplinary Proceeding Against Miller,* 149 Wn.2d 262, 285, 66 P.3d 1069 (2003). The attorney facing discipline bears the burden of bringing cases to the court's attention that

---

[10] *In re Disciplinary Proceeding Against Christopher*, 153 Wn.2d 669, 105 P.3d 976 (2005).

demonstrate the disproportionality of the sanction imposed. *In re Disciplinary Proceeding Against Kagele,* 149 Wn.2d 793, 821, 72 P.3d 1067 (2003). Placide cites only to *Christopher.*

In *Christopher,* the attorney, after realizing she forgot to submit an offer of judgment to preserve her clients' right to an award of attorney fees, forged her secretary's signature on a declaration of mailing and attached it to an offer of judgment pleading that she backdated and mailed to opposing counsel. "She also created a declaration in support of attorney fees, which stated that the offer of judgment was a true and correct copy of [her clients'] offer to settle." *Christopher,* 153 Wn.2d at 674-75. Christopher was found to have "committed the criminal act of forgery" as well as to have "intentionally made false statements under oath with the intent to deceive the arbitrator and the parties." *Christopher,* 153 Wn.2d at 679. Christopher argued that ABA *Standards* std. 5.11(b), at issue here, did not apply to her conduct. We held ABA *Standards* std. 5.11(b) applied to her conduct, but "after balancing the aggravating and mitigating factors and considering unanimity and proportionality [determined that] a departure from the presumptive sanction is justified." *Christopher,* 153 Wn.2d at 688.

In reviewing the applicable standard for imposing sanctions, we apply the ABA *Standards.* The ABA *Standards* provide a two-step process to determine the proper sanction after a finding of lawyer misconduct: (1) the presumptive sanction

is determined by considering the ethical duty violated, the lawyer's mental state, and the extent of the actual or potential harm caused and (2) aggravating and mitigating factors are weighed to determine whether a deviation is appropriate. *Kuvara,* 149 Wn.2d at 252. As noted in *Christopher,* we then consider whether the "factors of unanimity and proportionality should alter the sanction." *Christopher,* 153 Wn.2d at 678 (citing *Kuvara,* 149 Wn.2d at 259).

> The hearing officer determined, in relevant part:
>
> [Placide's] violations of RPC 8.4(c) alleged in Counts 2 and 7, in misrepresenting the fact, extent and number of her outside client representations, caused Dorsey and Ogletree
>     a.   actual injury by concealing the extent of her breaches of contract and violations of fiduciary duties, thereby preventing the firms from recovering from her the amounts she actually owed to them for those breaches; and
>     b.   potential injury, in that if [Placide] had succeeded in misleading them about her conduct, she would have continued to engage in such conduct causing additional actual and potential injuries described.

DP at 75 (AFFCLR). Unlike in *Christopher,*[11] the Board *unanimously* agreed with the hearing officer's recommendation that ABA *Standards* std. 5.11(b) applied to counts 2 and 7. But in *Christopher,* we relied on seven mitigating factors to conclude that "the *predominance* of mitigating factors justifies a departure from the presumptive sanction [of disbarment]." *Christopher,* 153 Wn.2d at 686

---

[11] In *Christopher,* we agreed with the divided 6-4 Board's recommendation that ABA *Standards* std. 5.11(b) applied and that the presumptive sanction was disbarment.

(emphasis added). In contrast, here the hearing officer found two mitigating factors, and the balance weighs in favor of disbarment. We therefore reject Placide's proportionality argument.

9. The challenged aggravating factor of false statements or other deceptive practices during the disciplinary process does not apply; the remaining aggravating and mitigating factors support the hearing officer's and the Board's unanimous recommendation of disbarment

Applying ABA *Standards* std. 9.22, the hearing officer found six aggravating factors: (1) a pattern of misconduct, (2) multiple offenses, (3) false statements or other deceptive practices during the disciplinary process, (4) refusal to acknowledge the wrongful nature of the conduct, (5) substantial experience in the practice of law, and (6) indifference to making restitution. The hearing officer found two mitigating factors: (1) absence of a prior disciplinary record and (2) timely good faith effort to make restitution as applied to count 5 only.

Placide challenges only one of the aggravating factors: false statements or other deceptive practices during the disciplinary process. As to that factor, the hearing officer found as follows: "Respondent repeatedly made false representations of fact in presenting questions posed to witnesses at the hearing, while asking them to agree with her factual representations." DP at 79 (AFFCLR). Placide asserts that the hearing officer "based this on his findings . . . that four times during her pro se examinations of witnesses she asked questions based on

premises which he claimed were contradicted by overwhelming evidence."

Opening Br. of Appellant at 37. Placide's concerns are warranted.

"Falsifying information during an attorney discipline proceeding is one of the most egregious charges that can be leveled against an attorney." *In re Disciplinary Proceeding Against Whitt*, 149 Wn.2d 707, 720, 72 P.3d 173 (2003). The hearing officer concluded that Placide frequently included false or misleading assertions in the form of questions she posed to witnesses, in effect testifying herself. For example, in cross-examining a Dorsey witness, Kenneth Jorgensen, the following colloquy ensued:

> [Placide:] Do you recall at the end of the conversation where after I discussed or we identified the non-firm clients, you made a comment that said, "These non-firm clients, it's not—it's not a big deal; but the fact that you're planning to leave and take members of the firm, that's where your partners don't trust you."
> Do you recall that?
> [Jorgensen:] That couldn't have happened. We didn't know you were going to Ogletree until you were there.

1 VRP at 110-11. Placide had insisted throughout the investigation that she was, in fact, terminated by Dorsey in a retaliatory fashion.

Another example is representative of her style of questioning on cross-examination of an Ogletree witness, Charles Baldwin:

> [Placide:] Okay. During our meeting, what was supposed to be our meeting in January, 2013, that occurred, do you recall how the meeting was scheduled and organized?

> [Baldwin:] I think the exchange of e[-]mails, maybe a phone call. I don't remember exactly.
>
> [Placide:] Do you recall, Mr. Baldwin, that I called the meeting, that I repeatedly would ask you to come visit us in the Seattle office to discuss the office plans for expansion and the support we needed from Ogletree Deakins?
>
> [Baldwin:] No. I know that's not true because the plans for this meeting were set up after Chris Mixon did the investigation and we found all the information about you receiving funds for work done on behalf of firm clients.

3 VRP at 615. Placide had insisted throughout the investigation that the surprise nature of the meetings had been a factor affecting her ability to respond with precision when confronted with accusations of off-the-books representation.

While it is evident from the record that the form of Placide's questions posed to witnesses may have been questionable at times and perhaps, in the eyes of the hearing officer, misleading, reading the transcript reveals that Placide, at least in several of the portions of the record cited to, was attempting to reveal on cross-examination certain inconsistencies in the testimony of the Dorsey and Ogletree witnesses.

ODC concedes that the presence of this aggravating factor does not significantly matter. Citing to *Romero*, 152 Wn.2d at 136-37, where we said that "[a]n attorney has a cognizable due process right . . . to be afforded an opportunity to anticipate, prepare, and present a defense," Placide argues that "[i]n presenting a defense the lawyer is entitled to present his/her theory of the defense[,] which

includes asking witnesses if they recall events a certain way." Opening Br. of

Appellant at 38. Attorney discipline proceedings are quasi-criminal in nature. *In re*

*Ruffalo*, 390 U.S. 544, 551, 88 S. Ct. 1222, 20 L. Ed. 2d 117 (1968). As part of her

presentation of a defense, an attorney is entitled to challenge witnesses. We

therefore agree with Placide and conclude that there is not substantial evidence in

the record to suggest that Placide was making "false representations in the course

of her questions posed to witnesses at the hearing" as to the hearing officer's

factual finding. DP at 66 (AFFCLR). To conclude otherwise might chill the right

of an attorney accused of misconduct to put the WSBA to a vigorous proof, as

Placide suggests. In *Whitt*, where this aggravator was found to apply, an attorney

submitted "fabricated documents" and falsified information, we stressed that

"[m]isrepresentations and fabrications during the disciplinary process reflect

adversely on the lawyer's ability to practice law, the public perception of the legal

system, and the judicial process as a whole." *Whitt*, 149 Wn.2d at 721. Placide's

questioning of adverse witnesses on cross-examination does not rise to the

requisite level. We therefore conclude that the aggravating factor in question was

improperly applied. The five remaining aggravators nevertheless still outweigh the

two mitigating factors and therefore support the hearing officer's and the Board's

recommendation of disbarment.

10. The hearing officer properly excluded Placide's proposed testimony about her conversation with the "ethics hotline" under APR 19(e)(5)

Placide next argues that the hearing officer improperly excluded Placide's proposed testimony concerning her alleged conversation with an ethics line professional responsibility counsel regarding "her situation in 2012." Opening Br. of Appellant at 39; *see* 1 VRP at 18. At the disciplinary hearing, Hearing Officer Carl Carlson informed Placide that APR 19(e)(5) "expressly says that contact with or information given or even the fact of contact with the Bar Association's . . . ethics line is not admissible in a proceeding like this." 1 VRP at 19. Carlson granted ODC's motion in limine to exclude her proposed testimony over Placide's objection that the proposed testimony went to her "frame of mind" and that the rule was improperly weighed in favor of the WSBA. 1 VRP at 19. Placide now argues that "[s]eeking advice from a recognized source of wisdom and following that advice could tend to show good faith," and that, as "overbroad," the rule amounts to "a denial of substantive due process." Opening Br. of Appellant at 40-41.

APR 19(e)(5) states:

Neither the making of an inquiry nor the providing of information by professional responsibility counsel under this rule creates a client-lawyer relationship. Any information or opinion provided during the course of an ethics inquiry is the informal, individual view of professional responsibility counsel only. No information relating to an ethics inquiry, including the fact that an inquiry has been made, its content, or the response thereto, may be asserted in response to any grievance or complaint under the applicable disciplinary rules, nor is

such information admissible in any proceeding under the applicable disciplinary rules.

There is no dispute that the rule is directly applicable to Placide's proposed testimony and that the hearing officer was obligated to follow it. The question of the rule's constitutionality appears to be an issue of first impression, reviewed de novo. *In re Disciplinary Proceeding Against King*, 168 Wn.2d 888, 232 P.3d 1095 (2010). We conclude that the application of APR 19(e)(5) does not violate Placide's constitutional rights and consequently uphold the decision by the hearing officer to exclude the testimony.

APR 19(e) was adopted by this court in 2007. "The new provisions codified the WSBA's practice of responding to inquiries about compliance with the Rules of Professional Conduct (commonly known as the ethics hotline)," establishing "the ground rules for advice given by the WSBA, [as well as] record-keeping requirements, and . . . rules of confidentiality." 2 KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE: APR 19 author's cmt. at 314 (8th ed. 2014). Placide challenges the rule's application essentially as it pertains to her ability to introduce evidence and present a defense.

In the criminal context, state and federal rule makers have broad latitude to establish evidentiary rules excluding evidence. *United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998). In *Scheffer*, the United States

Supreme Court stated that "[s]uch rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Scheffer*, 523 U.S. at 308 (quoting *Rock v. Arkansas*, 483 U.S. 44, 58, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987); *Michigan v. Lucas*, 500 U.S. 145, 149, 111 S. Ct. 1743, 114 L. Ed. 2d 205 (1991)). Because attorney discipline is a quasi-criminal proceeding, similar considerations likely apply.

Placide's argument is that a rule preventing her from offering her best defense is arbitrary and capricious, with no rational basis for a blanket rule denying her the right to put on her state-of-mind defense. ODC counters that the rule "serves the legitimate and important interest of preventing a lawyer . . . from lying about an ethics inquiry without the possibility of being contradicted[12] by the other party to the communication." Answering Br. of ODC at 27. ODC points out that in order to preserve the confidentiality of communications between an inquirer and professional responsibility counsel, the latter is prohibited from making or maintaining "any permanent record of the identity of an inquirer or the substance of a specific inquiry or response," but "may keep records of the number of inquiries and the nature and type of inquiries and responses." APR 19(e)(6). We

---

[12] APR 19(e)(7) states that "[c]ommunications between an inquirer and professional responsibility counsel are confidential and shall be privileged against disclosure except by consent of the inquirer or as authorized by the Supreme Court."

agree with ODC and conclude that APR 19(e)(5) is not arbitrary or disproportionate to the purposes it is designed to serve, and does not violate Placide's constitutional rights. Placide was not prevented from presenting any and all evidence or testimony regarding her state of mind in 2012, but only that evidence which the WSBA would have had no opportunity to verify or counter. The evidence of Placide's ethics inquiry was therefore correctly excluded by the hearing officer.

> 11. The hearing officer applied the correct legal standard to determine the presumptive sanctions for counts 1, 2, 6, and 7 with respect to dishonesty, deceit, and misrepresentation

Finally, Placide argues that the hearing officer erred in his application of ABA *Standards* std. 5.11(b) to determine the presumptive sanction for Placide's violation of RPC 8.4(c) as to counts 1, 2, 6, and 7 related to the hearing officer's findings that "Respondent's ongoing pattern of dishonesty, deceit and misrepresentations was so extensive and consistent that it 'seriously adversely reflects on [her] fitness to practice.'" DP at 76 (AFFCLR).

Placide points to the hearing officer's finding that in committing conduct charged in counts 1, 2, 6, and 7, Placide acted "knowingly." DP at 74 (AFFCLR). ODC states that "[i]t is abundantly clear, however, that the hearing officer found [Placide's] dishonest and deceitful conduct to be intentional," pointing to "the many factual findings" of the hearing officer regarding Placide's lying and

concealment. Answering Br. of ODC at 45. ODC relies on the definition of a "lie" to argue that as such, it is an intentionally false statement.

For purposes of imposing lawyer sanctions, the ABA *Standards* define "knowledge" as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." ABA *Standards* Definitions at 17. The *Standards* define "intent" as "the conscious objective or purpose to accomplish a particular result." ABA *Standards* Definitions at 17. An attorney's state of mind may be inferred from the facts. *Preszler*, 169 Wn.2d at 20. "An attorney's mental state 'is a factual determination and the officer's finding is given great weight.'" *Preszler*, 169 Wn.2d at 20-21 (quoting *Longacre,* 155 Wn.2d at 744). In determining whether a factual finding is supported by substantial evidence, we look to the entire record. *Longacre*, 155 Wn.2d at 735-36.

It is unclear from the record why the hearing officer found that Placide acted only "knowingly" as opposed to "intentionally" with regard to counts 1, 2, 6, and 7 (dishonesty, deceit, and misrepresentation). It is clear, however, that the conclusion that Placide acted "knowingly" does not fit the presumptive legal standard applied, and, at most, the conduct charged fits ABA *Standards* std. 5.12, with a presumptive sanction of suspension. We agree with ODC, however, to the extent that the factual findings, including the hearing officer's finding that "[Placide]

45

intentionally mislead Dorsey as to the amounts she had received," DP at 56 (AFFCLR), support the conclusion that Placide's conduct was intentional as to counts 1 and 2, and to the extent that the finding that Placide "intended to retain [the Ogletree] funds personally, without disclosing them to Ogletree," DP at 62 (AFFCLR), supports the same conclusion as to counts 6 and 7. We conclude that Placide acted intentionally and apply ABA *Standards* std. 5.11(b) with the presumptive sanction of disbarment.

ODC argues that the hearing officer incorrectly determined that for counts 1 and 6 (theft from Dorsey and Ogletree) the presumptive sanction for respondent's violation of RPC 8.4(b) is suspension under ABA *Standards* std. 5.12. Because we conclude that the conduct charged in counts 1 and 6 constitutes theft as discussed in Section 4 of this opinion, and given the requisite factual findings of intentionality by the hearing officer as to counts 1 and 6, we agree with ODC that the correct legal standard is ABA *Standards* std. 5.11(a), which provides that disbarment is the presumptive sanction when "a lawyer engages in serious criminal conduct a necessary element of which includes . . . misappropriation, or theft."

CONCLUSION

We uphold the hearing officer's findings of fact and conclusions of law with the following exceptions: we (1) conclude that the hearing officer failed to consider or establish intent for purposes of relying on RCW 9A.56.020(1) in

46

concluding that Placide committed theft as to client P.S. funds, (2) agree with ODC that Placide's retention of fees from outside clients, regardless of whether those clients intended to pay them directly to her, constitutes "theft" as defined by RCW 9A.56.020(1)(a), and that the hearing officer erred in concluding otherwise, (3) disagree with the hearing officer and ODC and conclude that the aggravating factor of false statements or other deceptive practices during the disciplinary process was improperly applied, (4) conclude that the hearing officer's determination that Placide acted "knowingly" does not fit the presumptive legal standard as applied to counts 1, 2, 6, and 7 by the hearing officer, and (5) that because the record shows that Placide engaged in intentional conduct in violating RPC 8.4(c), and committed theft as charged in counts 1 and 6, conclude that the correct legal standards are ABA *Standards* stds. 5.11(b) and 5.11(a), and the correct presumptive sanction is disbarment.

Having considered the challenged findings and the correct presumptive sanctions, having weighed the aggravating and mitigating factors to determine whether a deviation from the presumptive sanctions is warranted,[13] and having considered factors of unanimity and proportionality,[14] we agree with the Board's

---

[13] *See Kuvara*, 149 Wn.2d at 252-53.

[14] *See Kuvara*, 149 Wn.2d at 259 (citing *In re Disciplinary Proceeding Against Noble*, 100 Wn.2d 88, 667 P.2d 608 (1983)).

unanimous recommendation and disbar Placide.

_____

WE CONCUR:

Fairhurst, C.J.

Madsen, J.

Owens, J.

Stephens, J.

Wiggins, J.

González, J.

Yu, J.