**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
SEPTEMBER 5, 2024

_González, C.J._
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
SEPTEMBER 5, 2024

SARAH R. PENDLETON
ACTING SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Disciplinary Proceeding Against | ) ) ) | No. 202147-6 |
| THI ANH HUYNH, an Attorney at Law (Bar No. 34947) | ) ) ) ) | EN BANC |
| _____ | ) | Filed: <u>September 5, 2024</u> |

MONTOYA-LEWIS, J.— In this attorney discipline proceeding, Thi Anh Huynh was charged with numerous counts of misconduct, including false representation, theft, and other misconduct involving dishonesty. The hearing officer recommended disbarment, and the Washington State Bar Association (WSBA) Disciplinary Board (Board) unanimously affirmed. Huynh challenges the disbarment recommendation, arguing a number of the hearing officer's findings of fact and conclusions of law lack adequate support and his due process rights were violated. Huynh asks this court to reverse the Board's decision and reject the disbarment recommendation.

We adopt the Board's recommendation and disbar Huynh. The hearing officer's findings of fact are supported by substantial evidence, the conclusions of

law are supported by those findings, and Huynh waived his right to raise a statutory defense to theft. On the record as a whole, Huynh misappropriated client and investor funds, attempted to conceal the thefts, and engaged in other intentional conduct involving dishonesty; thus, disbarment is a proportionate sanction.

## FACTS AND PROCEDURAL HISTORY

A. Factual Background

Huynh was admitted to the practice of law in Washington in 2004, and he has no record of prior discipline. He eventually became the managing partner of Intrepid Law Group LLC. Around July 2016, Huynh and Intrepid Law Group began representing Joseph Pham in *Pham v. Nguyen*. The case involved two condominiums located at 606 Post Avenue in Seattle that were partly owned by Pham.

Pham also owned an apartment building at 4200 Letitia Avenue in Seattle. Pham and Huynh had a mutual family friend, Vinh Lam; he was the individual who introduced Pham and Huynh.[1] Lam and Huynh became business partners, and together they wanted to purchase the 4200 Letitia Avenue building, but they did not complete the transaction. In January 2016, Huynh created 4200 Letitia LLC to help with the purchase of the building. In August 2017, Huynh arranged for Pham to

---

[1] Many of Huynh's explanations for the transactions at issue here rely on the close relationship and trust established between Pham and Lam.

quitclaim 4200 Letitia Avenue to 4200 Letitia LLC.

Huynh's misconduct is explained as a series of three events: (1) a loan Huynh arranged from Tracy Takenaka and Brian Rounds to Pham, (2) an investment in Green Sky Productions LLC that Huynh arranged for Takenaka and Rounds, and (3) a loan Huynh arranged from Pat McGrew to Pham.

1.      *Loan from Takenaka and Rounds to Pham*

Huynh was involved in a loan transaction between married couple Takenaka and Rounds, and Pham. Takenaka and Rounds saw this loan as a promising business opportunity because they would be able to earn interest. The hearing officer found Huynh engaged in misconduct in this transaction by obtaining the loan without Pham's knowledge and using the proceeds for his own purposes.

In September 2017, Huynh arranged a $50,000 loan from Takenaka and Rounds to Pham. The loan was secured by the 4200 Letitia Avenue property, a property owned by Pham and managed by Huynh. Pham asserts that Huynh did not inform him about this loan and that Pham did not know Takenaka or Rounds. Takenaka similarly testified that she did not know Pham, but she understood he was the individual she and her husband were loaning the money to and he was the owner of the 4200 Letitia Avenue property.

Huynh did not disclose his involvement with 4200 Letitia LLC to Takenaka or Rounds. Later that month, Huynh deposited a $50,000.00 check from Takenaka

for the loan to Pham in Huynh's trust account. Two days later, Huynh transferred the full amount to his operating account. Huynh was not entitled to those transfer funds, but he used a portion of the loan money to pay $21,659.66 of his and his mother's credit card bills.

In 2018, Cathay Bank began to pursue foreclosure on an earlier loan secured by 4200 Letitia Avenue. Huynh asked an Intrepid Law Group employee, Shelley Guidry, to handle the refinancing to avoid foreclosure, and he remained involved in the decision-making throughout the refinancing process in 2019. Guidry arranged to pay off the Cathay Bank loan and another loan in foreclosure, but she informed Huynh that Takenaka and Rounds would likely not be repaid for their loan from the refinance. Guidry informed Huynh that for the refinance to take place, liens on 4200 Letitia Avenue had to be subordinated. Guidry then informed Takenaka about the subordination agreement, but Takenaka and Rounds never signed the agreement.

Huynh executed a full reconveyance deed removing Takenaka and Rounds's interest in 4200 Letitia Avenue to allow the loan to close, and the reconveyance deed was then recorded. Consequently, Takenaka and Rounds lost the security for their $50,000 loan. Takenaka and Rounds allege that Huynh never informed either of them about the reconveyance deed, which Huynh denies. The reconveyance deed stated that Takenaka and Rounds provided Huynh with "a written request to reconvey, reciting that the obligations secured by the Deed of Trust ha[d] been fully

4

satisfied or provided for." Ex. A-150. However, Huynh has admitted that neither Takenaka nor Rounds provided him with "a written request to reconvey." Clerk's Papers (CP) at 33, 48-49.

### 2. *Investment by Takenaka and Rounds in Green Sky Productions*

During the same time period, Huynh was involved in an investment transaction with Takenaka and Rounds, where the couple invested in a company managed by Huynh with the understanding that the money would be used to get the business going. The hearing officer found Huynh engaged in misconduct in this transaction by using Takenaka and Rounds's investment funds for purposes unrelated to the company and providing them with a false accounting of their investment.

Huynh arranged for Takenaka and Rounds to invest $445,000 in Green Sky Productions LLC, a company managed by Huynh. Huynh created that company with a goal of developing an operation for the cultivation, production, and processing of cannabis, and Takenaka and Rounds were aware of this goal.

In 2017, Takenaka and Rounds wired $445,000 to Huynh's trust account. Huynh transferred

- $45,000 to his operating account, which had a negative balance;
- $32,400 to Pacific Rim Property Investments, an entirely separate entity for which Intrepid Law Group is listed as the registered agent and Huynh is listed as the governor; and
- $75,000 to partially repay a loan that Ross Skocilich (an individual unrelated to Green Sky Productions) made to Pham.

In 2018, Takenaka requested an accounting of the investment funds, and Huynh provided a written accounting that did not appear to explicitly include any of the above transfers. Huynh did not disclose those transfers to Takenaka or Rounds through any other means.

### 3.    *Loan from McGrew to Pham*

Also in 2018, Huynh was involved in another loan transaction between McGrew and Pham, where McGrew understood his loan to Pham to be for the purpose of a real estate project while Pham waited for funds from the sale of a different property. Pham asserts he knew nothing about this loan. The hearing officer found Huynh engaged in misconduct in this transaction by failing to disclose conflicts of interest and using the loan proceeds for his own purposes.

Huynh arranged a $200,000 loan from former client McGrew to current client Pham. McGrew accepted an assignment of proceeds purporting to give McGrew the rights to proceeds from the anticipated sale of one of Pham's properties, 606 Post Avenue. The assignment of proceeds acted as security for the rights of the proceeds.

Huynh did not disclose any conflicts of interest to or obtain any conflict waivers from Pham or McGrew. Huynh deposited a $200,000 check from McGrew in Huynh's trust account for the loan to Pham. Over the course of the next two weeks, Huynh transferred $180,000 of Pham's loan proceeds to Huynh's personal

account and to other individuals and entities. For instance, Huynh transferred $100,000 of the McGrew loan to Huynh's personal bank account. Huynh alleges he made the transfer to repay a separate loan of approximately $100,000 that Huynh's wife had made to Lam (a mutual family friend of Huynh and Pham) for the purpose of one of Lam's businesses, TEL Enterprises. Huynh claims that Pham authorized Lam to do whatever he chose with the McGrew loan funds, thus asserting the transfer to Huynh's wife was permitted. Pham asserts that he did not even know about the McGrew loan and therefore did not provide any authorization, but Huynh denies this.

### B. Procedural History

In 2019, Guidry filed a grievance against Huynh on behalf of Pham. In 2021, the Office of Disciplinary Counsel (ODC) filed a formal complaint, charging Huynh with the following 12 counts of misconduct:

> **Count 1:** By obtaining the Takenaka/Rounds loan without Pham's knowledge and/or by misrepresenting to Takenaka and Rounds that Pham had agreed to the loan, [Huynh] violated RPC 8.4(c), RPC(i), and/or RPC 8.4(n).
> **Count 2:** By obtaining the Takenaka/Rounds loan and using the proceeds for [Huynh]'s own purposes without (1) providing Pham with anything in writing regarding the transaction, (2) advising Pham in writing to seek, and providing Pham a reasonable opportunity to seek, independent counsel, and (3) obtaining Pham's informed written consent to the transaction, [Huynh] violated RPC 1.8(a).
> **Count 3:** By using the Takenaka/Rounds loan proceeds for [Huynh]'s own use, [Huynh] violated RPC 1.15A(b), RPC 8.4(b) (by committing the crime of theft as defined in RCW 9A.56.020), RPC 8.4(c), and/or RPC 8.4(n).

7

**Count 4:** By drafting the promissory note and deed of trust for the Takenaka/Rounds loan and using them to obtain funds from Takenaka and Rounds for [Huynh]'s own business and personal use, [Huynh] violated RPC 8.4(b) (by committing the crime of forgery as defined in RCW 9A.60.020), RPC 8.4(c), RPC 8.4(i), and/or RPC 8.4(n).

**Count 5:** By executing the Full Reconveyance Deed falsely stating that Takenaka and Rounds had made a written request to reconvey, [Huynh] violated RPC 8.4(b) (by committing the crime of false representation concerning title as defined in RCW 9.38.020), RPC 8.4(c), RPC 8.4(i), and/or RPC 8.4(n).

**Count 6:** By using the investment funds of Takenaka and Rounds for [Huynh]'s personal use and/or other purposes unrelated to Green Sky Productions, [Huynh] violated RPC 8.4(b) (by committing the crime of theft as defined in RCW 9A.56.020), RPC 8.4(c), RPC 8.4(i), and/or RPC 8.4(n).

**Count 7:** By providing Takenaka and Rounds with a false accounting of their $445,000 investment, [Huynh] violated RPC 8.4(c).

**Count 8:** By representing McGrew in the loan transaction in which another client, Pham, was directly adverse, [Huynh] violated RPC 1.7(a)(1).

**Count 9:** By representing Pham in the 606 Post Avenue Litigation when there was a significant risk that the representation would be materially limited by [Huynh]'s responsibilities to McGrew or by [Huynh]'s personal interest in using the property as security and a source of repayment for the McGrew loan, [Huynh] violated RPC 1.7(a)(2).

**Count 10:** By obtaining the McGrew loan in Pham's name and using the funds for [Huynh]'s own purposes without (1) providing Pham with anything in writing regarding the transaction, (2) advising Pham to seek, or giving Pham a reasonable opportunity to seek, independent counsel, and (3) obtaining Pham's informed written consent to the transaction, [Huynh] violated RPC 1.8(a).

**Count 11:** By using $180,000 of the $200,000 McGrew loan for [Huynh]'s personal use or other purposes unrelated to Pham, [Huynh] violated RPC 1.15A(b), RPC 8.4(b) (by committing the crime of theft as defined in RCW 9A.56.020), RPC 8.4(c), RPC 8.4(i), and/or RPC 8.4(n).

**Count 12:** By drafting the promissory note and Assignment of Proceeds of Sale from Litigation for the McGrew loan and using them

to obtain funds from McGrew for [Huynh]'s own business and personal use, [Huynh] violated RPC 8.4(b) (by committing the crime of forgery as defined in RCW 9A.60.020), RPC 8.4(c), RPC 8.4(i), and/or RPC 8.4(n).

Decision Papers (DP) at 1-3; CP at 34-42.

After a four-day hearing, the hearing officer concluded that ODC proved all counts of misconduct, except counts 1, 4, and 12, by a clear preponderance of the evidence. The hearing officer found that Huynh's state of mind was intentional and/or knowing with respect to all sustained counts and that Huynh caused injury, serious injury, or potentially serious injury to clients and third parties. The hearing officer found three aggravating factors: (1) dishonest or selfish motive, (2) multiple offenses, and (3) substantial experience in the practice of law. The hearing officer found only one mitigating factor: absence of a disciplinary record. Ultimately, the hearing officer recommended disbarment. The Board unanimously adopted the hearing officer's disbarment recommendation. Huynh appeals.

## ANALYSIS

"We have plenary authority over, and hold the ultimate responsibility for, determining the nature of lawyer discipline." *In re Disciplinary Proc. Against McKean*, 148 Wn.2d 849, 861, 64 P.3d 1226 (2003) (citing *In re Disciplinary Proc. Against Tasker*, 141 Wn.2d 557, 565, 9 P.3d 822 (2000)). However, we have delegated certain responsibilities to the WSBA. *Id.* (citing *In re Disciplinary Proc. Against Heard*, 136 Wn.2d 405, 413-14, 963 P.2d 818 (1998)). The WSBA must

prove each count of misconduct by a clear preponderance of the evidence, which requires greater certainty than "'simple preponderance'" but less than "'beyond [a] reasonable doubt.'" *In re Disciplinary Proc. Against Poole*, 156 Wn.2d 196, 209, 125 P.3d 954 (2006) (alteration in original) (quoting *In re Disciplinary Proc. Against Allotta*, 109 Wn.2d 787, 792, 748 P.2d 628 (1988)). Regarding the disciplinary process, a hearing officer makes findings of fact, conclusions of law, and initial recommendations to the Board, who then reviews those recommendations and makes a decision that can be appealed to this court. *McKean*, 148 Wn.2d at 861 (citing *Heard*, 136 Wn.2d at 413-14).

A. Substantial Evidence Challenges to Findings of Fact

We give great weight to the hearing officer's findings of fact. *Poole*, 156 Wn.2d at 208 (citing *In re Disciplinary Proc. Against Guarnero*, 152 Wn.2d 51, 58, 93 P.3d 166 (2004)). "Unchallenged findings of fact are treated as verities on appeal." *In re Disciplinary Proc. Against Marshall*, 160 Wn.2d 317, 330, 157 P.3d 859 (2007). We will uphold challenged findings as long as they are supported by substantial evidence. *Id.* "Substantial evidence exists if the record contains 'evidence in sufficient quantum to persuade a fair-minded, rational person of the truth of a declared premise.'" *In re Disciplinary Proc. Against Bonet*, 144 Wn.2d 502, 511, 29 P.3d 1242 (2001) (internal quotation marks omitted) (quoting *In re Welfare of Snyder*, 85 Wn.2d 182, 185-86, 532 P.2d 278 (1975)). Where there is

more than one reasonable interpretation of the evidence, "'it is substantial if it reasonably supports the finding[, a]nd circumstantial evidence is as good as direct evidence.'" *In re Disciplinary Proc. Against McGrath*, 174 Wn.2d 813, 818, 280 P.3d 1091 (2012) (quoting *Rogers Potato Serv., LLC v. Countrywide Potato, LLC*, 152 Wn.2d 387, 391, 97 P.3d 745 (2004)). Specifically, a lawyer's knowledge and intent may be inferred from the circumstances. *In re Disciplinary Proc. Against Placide*, 190 Wn.2d 402, 441, 414 P.3d 1124 (2018); RPC 1.0A(f). Last, we do not judge the credibility of witnesses and instead rely on the evaluation by the hearing officer. *In re Disciplinary Proc. Against Miller*, 149 Wn.2d 262, 277, 66 P.3d 1069 (2003); *see also Allotta*, 109 Wn.2d at 793-94.

Huynh assigns error to a number of factual findings for lack of substantial evidence. Huynh's assignments of error include the following, grouped by counts of misconduct:

| FOF [(Finding of Fact)] 12-16 | Count 3 (Theft of Takenaka/Rounds Loan Proceeds) |
| --- | --- |
| FOF 21-24 | Count 5 (False Representation Concerning Title) |
| FOF 28-30 | Count 6 (Theft of Takenaka/Rounds Investment Funds) |
| FOF 27, 33, 35, and 42 | Count 7 (False Accounting of Takenaka/Rounds Investment Funds) |
| FOF 2, 37, and 60-61 | Counts 8 and 9 (Conflicts of Interest) |
| FOF 43-56 and 58 | Count 11 (Theft of McGrew Loan Proceeds) |

Appellant's Br. at 3. As explained below, we find that substantial evidence supports each of the hearing officer's challenged findings of fact because the evidence is sufficient to persuade a fair-minded, rational person of the truth of the declared

11

premise. *See Bonet*, 144 Wn.2d at 511.

> 1. *Findings Related to Count 3 (Theft of Takenaka/Rounds Loan Proceeds)*

FOF 12 and 15: Huynh argues that FOF 12—Huynh "did not provide the Takenaka/Rounds loan proceeds to Pham"—is contradicted by FOF 15—ODC "has not proved by a clear preponderance of the evidence that Pham never received the Takenaka/Rounds loan proceeds."[2] DP at 6-7. Exhibit A-120 shows a $50,000 deposit in September 2017 in Huynh's trust account and Exhibit A-121 shows a transfer of $50,000 to Huynh's operating account two days later. FOF 15 is based on evidence that in November 2017, $50,000—the amount of the Takenaka/Rounds loan—was transferred from Huynh's trust account to Pham. Ex. R129. But the hearing officer also found in FOF 13 that in September 2017, *before* that transfer, Huynh misappropriated a portion of the Takenaka/Rounds loan proceeds. DP at 6. The evidence that Huynh misappropriated the funds in September 2017 supports the finding in FOF 12 that Huynh failed to provide the proceeds to Pham. Even if a lawyer were to repay misappropriated funds, reimbursement of such funds does not eviscerate a lawyer's misconduct of misappropriating the funds in the first instance. *In re Disciplinary Proc. Against*

---

[2] Huynh also assigns error to FOF 15, but he made no argument regarding it. In any event, FOF 15 is favorable to Huynh because the hearing officer found that ODC did not meet its burden of proof as to that fact. DP at 7.

*Schwimmer*, 153 Wn.2d 752, 761, 108 P.3d 761 (2005).

FOF 13 and 16: Huynh argues that FOF 13—Huynh "had no entitlement to the Takenaka/Rounds loan proceeds"—is contradicted by FOF 16—Huynh "knew that [Huynh]'s interests as the beneficiary of the Takenaka/Rounds loan were adverse to those of Pham, who was legally responsible for the loan." DP at 6-7. It appears the hearing officer was using the term "beneficiary" in a colloquial manner, to mean Huynh benefited from the loan because he spent the money for his own purposes, and that is why Huynh's interests were adverse to Pham's. *See* DP at 7. This interpretation is supported by the context of the rest of FOF 16, which is unchallenged, and states that Huynh failed to disclose to Pham in writing that Huynh obtained the Takenaka/Rounds loan on Pham's behalf and that Huynh used the loan proceeds for his own purposes. *Id.* Moreover, the hearing officer found in FOF 16, and Huynh did not challenge, that Huynh failed to obtain Pham's informed written consent or advise Pham in writing of the desirability of seeking independent counsel regarding Huynh's use of the loan proceeds for his own purposes. *Id.*

Nevertheless, Huynh focuses on the use of the word "beneficiary" in FOF 16 and argues that as the beneficiary of the loan proceeds, he was entitled to use the funds. But Pham testified that he never obtained the Takenaka/Rounds loan

for Huynh to use the money for Huynh's own purposes. 2 Verbatim Rep. of Proc. (VRP) at 258; *see also* Ex. A-113. And Huynh fails to cite anywhere in the record that disproves such testimony. The lack of Pham's permission to use loan proceeds for Huynh's own interests is consistent across both findings of fact and in light of the record, a fair-minded, rational person would not be convinced that the hearing officer's use of the word "beneficiary" indicated unfettered permission for Huynh to use the loan proceeds for his own purposes.

FOF 14: Huynh assigns error to FOF 14, where the hearing officer found that Huynh used the Takenaka/Rounds loan proceeds for his own purposes and that he did so knowingly and intentionally. DP at 7. But Huynh does not make any arguments in support of the challenge, making it a verity on appeal. *Marshall*, 160 Wn.2d at 330.

2. *Findings Related to Count 5 (False Representation Concerning Title)*

FOF 21: Huynh challenges the finding that he "executed a full reconveyance deed removing Takenaka and Rounds's lien on 4200 Letitia Avenue" and purports it is legally incorrect because the deed must be recorded in order for the lien to be removed. DP at 8-9. But FOF 21 does not state that Huynh's execution of the deed *triggered* the lien's removal; rather, it indicates that Huynh executed the deed *for the purpose* of removing the lien. *See id*. Huynh admitted the latter. CP at 48 (Huynh

"executed a full reconveyance deed. [Huynh] admits that the purpose was for releasing the interest of Takenaka and Rounds in 4200 Letitia Avenue."). Huynh also contends that Guidry, the Intrepid Law Group staff member responsible for handling the refinance, offered questionable testimony and her lack of credibility and motive to "get paid" through the loan closure does not constitute substantial evidence. Appellant's Br. at 37. But we do not reevaluate the credibility of witnesses. *Miller*, 149 Wn.2d at 277; *Allotta*, 109 Wn.2d at 793-94. Huynh misstates the meaning of the hearing officer's finding and questions Guidry's credibility yet fails to provide any evidence to the contrary, so Huynh has not shown that the hearing officer erred in finding that Huynh executed the reconveyance deed to remove Takenaka and Rounds's lien on the property.

FOF 22: Huynh challenges the finding that his testimony is not credible that he executed the reconveyance deed with the understanding that Takenaka and Rounds would be paid from the refinance. DP at 9. Huynh shifts the focus to Guidry's lack of credibility and asserts that her selfish motives do not constitute substantial evidence. But again, this "court does not attempt to substitute its evaluation of the credibility of witnesses for that of the hearing officer." *Allotta*, 109 Wn.2d at 793-94. Guidry testified that she told Huynh that Takenaka and Rounds would not get paid out of the refinance, and this testimony was substantiated by messages between Guidry and Huynh on March 2, 2019, where Huynh

acknowledged that Takenaka and Rounds would "'not [be] getting paid out of refi.'" 2 VRP at 288-89; Ex. A-143. Huynh fails to mention that message. Thus, we have no reason to question the hearing officer's judgment regarding the credibility of these witnesses and the finding is supported by substantial evidence.

FOF 23 and 24: Huynh challenges FOF 24 that he "intentionally and fraudulently executed the Takenaka/Rounds full reconveyance deed," and contends that "[n]othing in this FOF recites the elements of the RCW that requires intent." DP at 10; Appellant's Br. at 34-36. A lawyer's intent may be inferred from the facts. *Placide*, 190 Wn.2d at 441. Also, Huynh does not specify which section of the Revised Code of Washington (RCW) he refers to, nor does he cite to any authority requiring the FOF to recite such elements. To the extent he refers to RCW 9.38.020, which is cited as part of count 5, the statute uses the language "maliciously or fraudulently" as it relates to intent but does not include any language requiring a hearing officer to state such elements in the findings of fact. Nevertheless, FOF 24 uses the language "fraudulently," DP at 10, as consistent with RCW 9.38.020, and such a finding is supported by the record. Huynh argues that Takenaka's testimony—that she never provided Huynh a written or oral request to reconvey and never had any communication with him about the reconveyance deed before he executed it—does not address his fraudulent intent. But Guidry also testified that Huynh directed her to prepare the reconveyance deed and record it, despite Huynh

16

admitting that Takenaka and Rounds would "not [be] getting paid out of refi" and without Huynh seeing any request for reconveyance from Takenaka and Rounds. 2 VRP at 291-92; Ex. A-143; 3 VRP at 513.

Huynh contends that Guidry and Pham met privately to fraudulently record the reconveyance deed without his knowledge, but the hearing officer found that this alleged scheme to record the reconveyance without Huynh's knowledge was not credible in FOF 25. 3 VRP at 542-43; DP at 10. Huynh did not challenge FOF 25, and it is therefore a verity on appeal. *Marshall*, 160 Wn.2d at 330. As a result of Huynh directing staff to execute the reconveyance for Takenaka and Rounds, despite never receiving a request to do so from Takenaka and Rounds, we affirm the hearing officer's finding that Huynh fraudulently executed the deed as supported by substantial evidence. *See McGrath*, 174 Wn.2d at 818 ("[C]ircumstantial evidence is as good as direct evidence."); *Placide*, 190 Wn.2d at 441 (intent may be inferred from the circumstances).

Huynh assigns error to FOF 23 in conjunction with FOF 24, where the hearing officer found that Huynh executed a false reconveyance deed. DP at 9-10. But Huynh does not address any portion of FOF 23 or make any arguments in support of the challenge, making it a verity on appeal. *Marshall*, 160 Wn.2d at 330.

> 3. *Findings Related to Count 6 (Theft of Takenaka/Rounds Investment Funds)*

<u>FOF 28, 29, and 30:</u> Huynh argues the findings described in FOF 28, 29, and

17

30, regarding a number of financial transactions found to be unrelated to Green Sky Productions, were not disallowed. DP at 11. He challenges the hearing officer's reliance on bank statements as substantial evidence, alleging that a rational person would not have enough information to conclude the transfers were unrelated to Green Sky Productions. But the record provides other evidence supporting these findings, which the hearing officer cited as well.

As for FOF 28—involving Huynh's $45,000 transfer of the Takenaka/Rounds investment funds from his trust account to his operating account on October 12, 2017—Huynh admitted that the day of the transfer, the operating account had a negative balance due to an overdraft. CP at 50; 1 VRP at 54. In addition to Huynh's admission, Exhibit A-133 is a bank statement showing that on October 12, 2017, there was a transfer of $45,000, which restored a positive balance to Huynh's operating account. A fair-minded, rational person would be persuaded that such a transfer was for his own purposes—to restore his bank account—and not related to Green Sky Productions. *See Bonet*, 144 Wn.2d at 511; *see also McGrath*, 174 Wn.2d at 818 (where more than one reasonable interpretation of evidence exists, evidence is substantial if it reasonably supports the finding).

As for FOF 29—involving Huynh's $32,400 disbursement of the Takenaka/Rounds investment funds from his trust account to Pacific Rim Property Investments—Huynh testified that Pacific Rim Property Investments was an entity

to hold real property owned by Huynh's brother-in-law and managed by Huynh and that it did not hold property related to cannabis business, which was the purpose of Green Sky Productions. 3 VRP at 395; 4 VRP at 570-71; Ex. A-127. Huynh's acknowledgement that his disbursement was to an unrelated company, absent evidence that this was allowed, provides substantial evidence that the use of the Takenaka/Rounds investment funds was for unrelated, unauthorized purposes.

As for FOF 30—involving Huynh's two disbursements totaling $75,000 of the Takenaka/Rounds investment funds from the trust account to Skocilich—Huynh testified that these two disbursements were "to service the interest on a loan that Mr. Pham had obtained from Ross Skocilich." 1 VRP at 54-55. Nothing in the record shows that Skocilich had any connection to Green Sky Productions. CP at 51. Huynh thought, based on purported representations by Pham, that part of the Skocilich loan was being used for Green Sky Productions. 3 VRP at 535; 4 VRP at 568-69. But Pham never corroborated this. Moreover, Huynh testified that half of the Skocilich loan funds went to Pham and the other half went to repay a different loan Pham obtained, which did not appear to be related to Green Sky Productions. 3 VRP at 418-19, 466; 1 VRP at 196-97. Based on the breadth of evidence, we find that it was reasonable for the hearing officer to find that the Skocilich disbursements were ultimately unrelated to Green Sky Productions and therefore disallowed. *See*

19

*also McGrath*, 174 Wn.2d at 818.[3]

> 4. *Findings Related to Count 7 (False Accounting of Takenaka/Rounds Investment Funds)*

FOF 27 and 42: Regarding FOF 27—Huynh "maintained a ledger" for the Takenaka/Rounds investment transactions—and FOF 42—Huynh "maintained a ledger" for McGrew loan transactions, Huynh contends that exhibits A-135 and A-178 are not "ledgers," but rather "check register[s]." Appellant's Br. at 30-32; DP at 11, 13. RPC 1.15B(a)(2) requires a ledger to show individual transactions containing the purpose, date, check number, and payor or payee for each transaction, as well as the new balance after each transaction. Exhibit A-135 contains all of the requirements for the Takenaka investment transactions and exhibit A-178 contains all of the requirements for the McGrew loan transactions. Moreover, the hearing officer's findings are focused on Huynh maintaining documentation of transactions related to the Takenaka/Rounds investment and the McGrew loan, and both cited exhibits demonstrate this, which constitute substantial evidence.

FOF 33: Huynh assigns error to FOF 33, in conjunction with FOF 27 and 35,

---

[3] Huynh makes further claims that the Green Sky Productions operating agreement permits loans to be used "'for any Company purpose'" and to "'perform any and all other acts or activities customary or incidental to the purpose of [the] Company,'" which, he argues, means that transactions did not need to be related to Green Sky Productions. Appellant's Br. at 33-34 (quoting Ex. A-128). But based on this quoted language, the operating agreement seems to require financial actions to be related to the "purpose" of the "Company": Green Sky Productions. Ex. A-128. Takenaka similarly understood the agreement to mean that the investment funds would not be used for purposes beyond Green Sky Productions. 1 VRP at 109.

where the hearing officer found that Huynh "never informed Takenaka and Rounds that their investment funds would be used for purposes unrelated to Green Sky Productions" and that Huynh intentionally used those funds for unrelated purposes. DP at 12. But Huynh does not address any portion of FOF 33 or make any arguments in support of the challenge, making it a verity on appeal. *Marshall*, 160 Wn.2d at 330.

FOF 35: Huynh challenges the finding that the Takenaka/Rounds investment accounting was false. DP at 12. Huynh maintained a ledger for transactions related to the Takenaka/Rounds investment (the "Huynh ledger"), which is exhibit A-135. DP at 11. Later, at Takenaka's request, he provided a different document (the "Takenaka accounting"), which is exhibit A-139. DP at 12. Exhibit A-135 reflects money transfers related to Green Sky Productions as well as other unrelated transactions. According to Huynh, exhibit A-135 included disbursements to other investors because it was not maintained for the benefit of only Green Sky Productions, and thus, it was not the accounting Takenaka requested. But exhibit A-135 expressly names "Tracy Tanaka [sic]" as the "Lender" and "Green Sky Productions" as the "Buyer," which would lead a fair-minded, rational person to understand the document relates to the Takenaka/Rounds investment in Green Sky Productions. *See Bonet*, 144 Wn.2d at 511. Huynh purports that per Takenaka's request for accounting of how investment funds were being used, he provided

Takenaka with exhibit A-139, an accounting he claims is not false and was maintained for the benefit of Green Sky Productions. But the hearing officer found in FOF 32 that exhibit A-139 did not list disbursements of the Takenaka/Rounds investment funds to entities unrelated to Green Sky Productions—Intrepid Law Group, Pacific Rim Property Investments, and Skocilich—and Huynh did not otherwise disclose to Takenaka or Rounds that he disbursed their investment funds to those entities. DP at 12. Huynh did not challenge FOF 32, making it a verity. *Marshall*, 160 Wn.2d at 330. Huynh's failure to disclose transactions unrelated to Green Sky Productions constitutes substantial evidence of false accounting.

Additionally, Huynh challenges the hearing officer's finding that Huynh intentionally used the Takenaka/Rounds investment funds for purposes unrelated to Green Sky Productions. DP at 12. Huynh failed to disclose more than $150,000 that was used to restore a positive balance to his bank account, to fund Pacific Rim Investments, and to repay Skocilich—all purposes unrelated to Green Sky Productions, as supported by substantial evidence in FOF 28-30 and as found in unchallenged FOF 32. DP at 11-12. Given that a lawyer's intent may be inferred from the circumstances, *Placide*, 190 Wn.2d at 441, it was reasonable for the hearing officer to find that Huynh intended to provide Takenaka and Rounds with false accounting to conceal his unauthorized use of their investment funds. *See McGrath*, 174 Wn.2d at 818.

22

### 5. *Findings Related to Counts 8 and 9 (Conflicts of Interest)*

FOF 2 and 37: Huynh challenges the findings that he represented Pham in the 606 Post Avenue litigation through May 2018. DP at 4, 13. Even if another lawyer came on to help, there is no evidence that Huynh ever withdrew as Pham's counsel. 3 VRP at 440. On May 1, 2018, Pham stated, "I represent the Plaintiff, Mr. Pham" in the 606 Post Avenue litigation. Ex. A-160. Pham also signed a "Stipulation and Agreed Order to Arbitrate" as Pham's lawyer in that matter, which was filed on May 18, 2017. Ex. A-109. We find that the written documentation that Huynh represented Pham constitutes substantial evidence.

As for FOF 37, Huynh additionally challenges the finding that he falsely told McGrew that Pham needed the loan for a real estate project; he claims this was a true statement. DP at 13. McGrew's understanding from Huynh was that the purpose of McGrew's loan was for one of Pham's real estate projects while Pham waited for payment from the sale of a different property. 1 VRP at 160-61; Ex. A-160. But Pham asserts he knew nothing about this loan. 2 VRP at 259. In any event, Huynh used a portion of the loan funds for purposes unrelated to Pham, as the hearing officer found in FOF 43-56 and as unchallenged by Huynh. DP at 14-16. For instance, Huynh disbursed $2,300.00 from McGrew loan to pay rent for Huynh's law office. 1 VRP at 64; 3 VRP at 454-55; Exs. A-165, A-178. Additionally, Huynh made an unrelated loan payment of $2,635.42 on behalf of his brother-in-law. 1

VRP at 74-75; 3 VRP at 461; Exs. A-174, A-178. Also, Huynh disbursed $3,000.00 to Redspark LLC, a company unrelated to Pham, to provide the business with capital. 1 VRP at 75-76; 3 VRP at 461; Exs. A-175, A-178. Thus, circumstantial evidence supports the finding that Huynh's statement to McGrew that Pham needed the loan for a real estate project was false because Huynh used the loan for various unrelated purposes without benefit to Pham. *See McGrath*, 174 Wn.2d at 818.

FOF 60: Huynh challenges the hearing officer's finding that McGrew's belief that Huynh represented McGrew as his lawyer in the loan to Pham was reasonable. Appellant's Br. at 51-52; DP at 16. The existence of an attorney-client relationship "depends largely on the client's subjective belief that it exists," and such a "'belief must be reasonably formed based on the attending circumstances, including the attorney's words or actions.'" *In re Disciplinary Proc. Against Haley*, 157 Wn.2d 398, 408, 138 P.3d 1044 (2006) (internal quotation marks omitted) (quoting *In re Disciplinary Proc. Against Egger*, 152 Wn.2d 393, 410-11, 98 P.3d 477 (2004)). Huynh testified that when dealing with escrow transactions, he would have the buyer and seller sign a document explaining how he was not their lawyer in the transaction. 3 VRP at 374-75. But Huynh did not provide McGrew with such a document or any other written instructions that he was not McGrew's lawyer in the loan transaction with Pham, and he acknowledged that he regretted not making it clear that he did not represent McGrew. 3 VRP at 442-43. Huynh's acknowledgement that his lack

24

of clarity was problematic, along with the absence of any written indication to the contrary, provide substantial evidence that McGrew's belief was reasonable.

Huynh also challenges the finding that he previously represented McGrew in another transaction. DP at 16. Huynh alleges that the disbursement document for that transaction, exhibit A-186, was for Tradewinds Investments LLC, where he provided escrow services as an escrow attorney. But the document provides an "Attorney fee balance" and lists McGrew by name twice. Ex. A-186; *see also* 1 VRP at 170 (Tradewinds Investments consists of McGrew and his business partner). McGrew also testified that the document was a repayment of a loan that he and his business partner made to Huynh in a real estate deal, so the document showed the amount they had in terms of the return on the investment, including attorney fees, which were kept by Huynh. 1 VRP at 159-60. Likewise, McGrew testified that he believed Huynh represented him in that transaction as McGrew called him, got him involved in the transaction, served as his contact person, and met at the property several times to go over the progress. *Id.*; *see also Haley*, 157 Wn.2d at 408 (client's belief must be reasonable based on the circumstances, including the attorney's actions). We therefore find there was substantial evidence that McGrew had a subjective reasonable belief that Huynh represented him in both transactions.

FOF 61: Huynh challenges the finding that he "had a personal interest in using Pham's property at 606 Post Avenue as security and a source of repayment for the

McGrew loan." DP at 17. He argues that exhibit A-162, cited by the hearing officer, does not establish Huynh's personal interest or explain "how or why Huynh had any personal interest in the property." Appellant's Br. at 52. Exhibit A-162 is an assignment of proceeds agreement between Pham and McGrew, assigning Pham's right, title, and interest in the 606 Post Avenue property to McGrew and permitting Huynh to withhold Pham's funds to repay McGrew for the loan. Although that exhibit may be insufficient to establish Huynh's personal interest in and of itself, the hearing officer also found in FOF 44-55[4] that Huynh used a significant amount of the McGrew loan funds for his own benefit. *See, e.g.*, Exs. A-164, A-178, A-179 (Huynh transferred $100,000 of McGrew loan from Huynh's trust account to personal account); 1 VRP at 64; 3 VRP at 454-55; Exs. A-165, A-178 (Huynh disbursed $2,300 from McGrew loan to pay rent for Huynh's law office). Moreover, Huynh did not challenge the remainder of FOF 61 that he did not disclose any potential conflicts of interest to McGrew or Pham. DP at 17. Based on circumstantial evidence, it is reasonable for the hearing officer to conclude Huynh had a personal interest in using Pham's property as security to be able to repay the loan to McGrew. *See McGrath*, 174 Wn.2d at 818.

6.      *Findings Related to Count 11 (Theft of McGrew Loan Proceeds)*

FOF 43: Huynh challenges FOF 43—that "Pham did not authorize [Huynh]

---

[4] As discussed below, FOF 44-55 are also supported by substantial evidence.

to use McGrew loan funds to repay a loan to Lam." DP at 14. McGrew believed, based on communications with Huynh, that the purpose of his loan to Pham was for one of Pham's real estate projects. 1 VRP at 160-61; Ex. A-160. As discussed above in the analysis of FOF 37, Huynh used the loan funds for purposes unrelated to Pham. DP at 14-16 (regarding FOF 43-56). For instance, as explained in FOF 43, and as unchallenged by Huynh, Huynh transferred $100,000 of the McGrew loan to Huynh's personal bank account. Exs. A-164, A-178-A-179. Huynh claims he made the transfer to his wife to repay a separate loan of approximately $100,000 that she made to a family friend, Lam. 1 VRP at 26; 3 VRP at 444-47. Huynh claims that Pham, who also considered Lam a family friend, authorized Lam to do whatever he chose with the McGrew loan funds, thus asserting the transfer to Huynh's wife was permitted. 1 VRP at 26; 3 VRP at 446. But Pham contends he knew nothing about this loan. 2 VRP at 259.

Huynh contends that FOF 43 contradicts FOF 40—that the promissory note for the McGrew loan at exhibit A-161 contained Pham's signature. DP at 13. Pham testified that he had never seen the promissory note and did not sign it. 1 VRP at 187. But the hearing officer found in FOF 40 that ODC "has not proved by a clear preponderance of the evidence that the signature was forged." DP at 13. This finding about Pham's signature does not contradict FOF 43, that Pham did not authorize Huynh to use McGrew loan funds to repay a loan to Lam. And regardless

27

of whether Pham signed the promissory note, Pham testified that he did not obtain the loan funds to loan money to Lam, 2 VRP at 259, which does not contradict the hearing officer's finding at FOF 40. In any event, this "court does not attempt to substitute its evaluation of the credibility of witnesses for that of the hearing officer." *Allotta*, 109 Wn.2d at 793-94. Huynh acknowledged that the McGrew loan was intended to be for the benefit of Pham. 3 VRP at 442; *see also* Appellant's Br. at 48 (no challenge to remainder of FOF 43 finding that Huynh used McGrew loan funds for purposes unrelated to Pham). Thus, we affirm the hearing officer's reliance on Pham's testimony as substantial evidence.

FOF 44-55: Huynh challenges FOF 44 that his testimony was not credible that he had authority to collect $100,000 from the McGrew loan. DP at 14-15. Specifically, the hearing officer cited to 3 VRP at 446-47, where Huynh testified that Pham authorized Lam to repay Huynh's wife for the abovementioned loan, which is why the loan funds were in Huynh's personal account. Huynh contends there is documentation that his wife loaned funds to Lam's company, TEL Enterprises, Appellant's Br. at 49 (citing Ex. R118), but he fails to explain how this demonstrates his testimony is credible that he had *authority* to collect money from the McGrew loan. Huynh fails to provide documentary evidence or witness testimony showing that he in fact had authority to use the McGrew loan for his own purposes, so Huynh has not shown that the hearing officer erred in finding his testimony not credible.

28

*Cf.* 3 VRP at 442 (Huynh's testimony acknowledging McGrew loan was intended to be for benefit of Pham); *see also Allotta*, 109 Wn.2d at 793-94.

In addition, it appears Huynh attempts to challenge FOF 45-55, but the only reference Huynh makes to those findings is that the hearing officer found part of Huynh's testimony not credible at FOF 44, "but somehow FOF¶¶45-55 are credible, citing to Huynh's same testimony and check register disbursements. *Ex. A-178*." Appellant's Br. at 48-49. The testimony the hearing officer found not credible at FOF 44—Huynh's testimony that the loan funds were in his personal account because Pham authorized Lam to pay off a loan involving Huynh's wife, 3 VRP at 446-47—is not the same testimony the hearing officer relied on at FOF 45-55 (citing to other portions of the VRP). DP at 14-15. The hearing officer also did not find any portion of exhibit A-178 not credible. Consequently, Huynh's purported challenges to those findings lack merit.

FOF 56: Huynh argues that FOF 56—that Huynh had no entitlement to use funds from the McGrew loan for his own purposes unrelated to Pham—is contradicted by FOF 58—which refers to Huynh as the "primary beneficiary" of the McGrew loan. DP at 15-16. Similar to the above discussion of FOF 16, it appears the hearing officer was using the phrase "primary beneficiary" in a colloquial manner, to mean Huynh benefited from the McGrew loan because he used the money for his own purposes, and that is why Huynh's interests were adverse to

29

Pham's. *See* DP at 16. This interpretation is supported by the context of the rest of FOF 58, which is unchallenged in relevant part and states that Huynh obtained the McGrew loan with the intent to benefit himself. *Id.* Huynh focuses on the phrase "primary beneficiary" in FOF 58 and argues that he was entitled to take an interest in the funds. Appellant's Br. at 50. But Huynh cites no credible evidence in the record that Pham agreed Huynh would be the beneficiary of the McGrew loan proceeds or that Pham authorized Huynh to use the McGrew loan funds. *Id.* In contrast, Pham testified that he did not even know about the McGrew loan. 2 VRP at 259. A fair-minded, rational person would be convinced that Huynh was not entitled to use the McGrew loan funds for his own purposes unrelated to Pham. *See Bonet*, 144 Wn.2d at 511.

FOF 58: Huynh challenges the finding that he knew his interests as the primary beneficiary of the McGrew loan were adverse to those of Pham. DP at 16. "A person's knowledge may be inferred from circumstances." RPC 1.0A(f); *see also Placide*, 190 Wn.2d at 426. The circumstances demonstrate that Huynh used Pham's loan funds for his own purposes, without Pham's authorization, despite acknowledging that the loan proceeds were intended to benefit Pham. CP at 38, 56; 2 VRP at 259; Exs. A-164 through A-179; 3 VRP at 442. Based on such circumstances, we find it is reasonable for the hearing officer to infer Huynh's knowledge that his use of the McGrew loan for his own purposes was adverse to

Pham's interests.

In sum, all of Huynh's challenges to the findings of fact fail. Some of his challenges are unsupported by argument and therefore those findings of fact are verities on appeal. *Marshall*, 160 Wn.2d at 330. Those findings that are actually challenged with argument are nevertheless supported by substantial evidence sufficient to persuade a fair-minded, rational person of their accuracy. *Bonet*, 144 Wn.2d at 511.

B.      Challenges to Conclusions of Law

We review conclusions of law de novo and uphold them if supported by the findings of fact. *In re Disciplinary Proc. Against Behrman*, 165 Wn.2d 414, 422, 197 P.3d 1177 (2008) (citing *Marshall*, 160 Wn.2d at 330). Where a sanction is recommended by a unanimous board, we will uphold the sanction "'in the absence of a clear reason for departure.'" *Id.* (quoting *In re Disciplinary Proc. Against Whitt*, 149 Wn.2d 707, 717, 72 P.3d 173 (2003)).

Huynh challenges various conclusions of law by the hearing officer, which were adopted unanimously by the Board. DP at 25. Huynh's challenges include the following, grouped by counts of misconduct:

| COL [(Conclusion of Law)] 70 and 77 | Counts 2 and 10 (Business Transactions) |
|---|---|
| COL 71, 73, and 78 | Counts 3, 6, and 11 (Theft) |
| COL 72 | Count 5 (False Representation) |
| COL 74 | Count 7 (False Accounting) |
| COL 75-76 | Counts 8 and 9 (Conflicts of Interest) |

31

Appellant's Br. at 53-69.

### 1.   Conclusions Related to Counts 2 and 10 (Business Transactions)

COL 70 and 77: The hearing officer concluded that Huynh violated RPC 1.8(a) by entering into a business transaction with his client, Pham. DP at 18-20. RPC 1.8(a) provides, "A lawyer shall not enter into a business transaction with a client" unless (1) the transaction and terms are fair and reasonable for the client and are fully disclosed in writing, (2) the client is advised in writing to seek and has a reasonable opportunity to seek the advice of independent legal counsel, and (3) the client gives informed written consent to the transaction.

Huynh's violation of RPC 1.8(a) involved entering into two business transactions with Pham: "obtaining the Takenaka/Rounds loan" (COL 70) and "obtaining the McGrew loan purportedly to lend money to Pham" (COL 77). Huynh argues he did not engage in any business transaction with Pham. "A 'business transaction' may be defined as '[a]n action that affects the actor's financial or economic interests.'" *LK Operating, LLC v. Collection Grp., LLC*, 181 Wn.2d 48, 76, 331 P.3d 1147 (2014) (alteration in original) (quoting BLACK'S LAW DICTIONARY 227 (9th ed. 2009)). We interpret the term broadly. *Id.* Here, the conclusions in COL 70 and 77 that Huynh entered into business transactions with Pham are supported by the findings of fact. The hearing officer reasonably found in FOF 2, 4-7, 10-14, 37-41, and 56 that while representing Pham, Huynh engaged in

32

the action of obtaining the Takenaka/Rounds loan and the McGrew loan in Pham's name. FOF 4-7, 10-11, and 38-41 are unchallenged, and therefore verities, *Marshall*, 160 Wn.2d at 330; and, as explained above, the other findings are supported by substantial evidence. Furthermore, unchallenged FOF 64 shows that Huynh's conduct caused potentially serious injury to Pham's financial or economic interests by making him legally responsible for the repayment of the $50,000 and $200,000 loans. The conclusions that Huynh entered into business transactions with Pham are supported by the findings of fact.

The hearing officer also concluded in both COL 70 and 77 that Huynh did so "without (1) providing Pham with anything in writing regarding the transaction, (2) advising Pham in writing to seek, and providing Pham a reasonable opportunity to seek, independent counsel, or (3) obtaining Pham's informed written consent to the transaction." DP at 18-20; *see* RPC 1.8(a). As for these conclusions that the exceptions have not been met, COL 70 is well supported by FOF 16, which found that Huynh failed to take these actions with respect to the Takenaka/Rounds loan, DP at 7, and which is supported by substantial evidence. And COL 77 is supported by FOF 57, which found that Huynh failed to take these actions with respect to the McGrew loan, DP at 16, and which is unchallenged. Thus, we uphold COL 70 and 77.

## 2. Conclusions Related to Counts 3, 6, and 11 (Theft)

COL 71, 73, and 78: The hearing officer concluded in COL 71 that Huynh "used the Takenaka/Rounds loan proceeds for [Huynh]'s own use" and in COL 78 that Huynh "used $180,000 of the $200,000 McGrew loan for [Huynh]'s personal use and other purposes unrelated to Pham," which violated "RPC 1.15A(b), RPC 8.4(b) (by committing the crime of theft as defined in RCW 9A.56.020), RPC 8.4(c), RPC 8.4(i), and RPC 8.4(n)" as charged in counts 3 and 11. DP at 19-20. Furthermore, the hearing officer concluded in COL 73 that Huynh "used the investment funds of Takenaka and Rounds for [Huynh]'s personal use and other purposes unrelated to Green Sky Productions," which violated "RPC 8.4(b) (by committing the crime of theft as defined in RCW 9A.56.020), RPC 8.4(c), RPC 8.4(i), and RPC 8.4(n) as charged in Count 6." DP at 19.

Huynh challenges the hearing officer's conclusions that he violated RPC 8.4(b).[5] RPC 8.4(b) provides that "[i]t is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." "Theft" means "[t]o wrongfully obtain or exert unauthorized control over the property or services of

---

[5] Huynh does not challenge the hearing officer's conclusions that he violated RPC 1.15A(b), RPC 8.4(c), RPC 8.4(i), or RPC 8.4(n) as charged in counts 3, 6, and 11. Appellant's Br. at 56-61.

another or the value thereof, with intent to deprive him or her of such property or services." RCW 9A.56.020(1)(a). One way of committing theft under RCW 9A.56.020(1)(a) is embezzlement, which "'occurs where property that is lawfully in the taker's possession is fraudulently or unlawfully appropriated by the taker.'" *Schwimmer*, 153 Wn.2d at 760-61 (quoting *State v. Ager*, 128 Wn.2d 85, 91, 904 P.2d 715 (1995)), 760 n.2. "'[E]mbezzlement involves a violation of trust and does not require proof of intent to permanently deprive the owner of the property taken.'" *Id.* at 761 (quoting *Ager*, 128 Wn.2d at 91).

Huynh advances four main arguments in challenging the violation of RPC 8.4(b). First, he asserts that the hearing officer failed to specify the type of theft that he committed. Appellant's Br. at 56. But as for conclusions of law, a hearing officer is required only to state "conclusions indicating violations of specific provisions of the Rules of Professional Conduct." *In re Disciplinary Proc. Against Johnson*, 114 Wn.2d 737, 745, 790 P.2d 1227 (1990). The hearing officer satisfied this requirement by explicitly naming specific provisions of the RPC that Huynh violated. DP at 19-20.

Second, Huynh argues the hearing officer did not make the requisite finding of "intent to deprive" for theft. Appellant's Br. at 56-57. Huynh points to *Placide*, where we required a hearing officer to make a finding of intent when concluding that the lawyer's actions constituted theft. 190 Wn.2d at 425. Here, the hearing

35

officer did precisely that when he found in FOF 14 and 56 that Huynh "*knowingly and intentionally* used [the Takenaka/Rounds and McGrew loan proceeds] for [Huynh]'s own purposes," and in FOF 33 that Huynh "*intentionally* used Takenaka/Rounds investment funds for purposes unrelated to Green Sky productions." DP at 7, 12, 15 (emphasis added). These findings of intent to use these funds for other purposes are supported by substantial evidence and satisfy the requirement to make findings of intent under *Placide*.

Third, it seems Huynh contends that "intentionally" using the funds for his own purposes does not align with an "intent to deprive" the owner of the funds. Appellant's Br. at 58-59. But in *Placide*, we found based on the record that with respect to retention of fees from outside clients, the lawyer "'*intentionally*'" misled an outside client and "'*intended* to retain [the . . .] funds personally'" without disclosure, so "the hearing officer could have reasonably concluded that [the lawyer] acted intentionally." 190 Wn.2d at 441-42, 428 (emphasis added) (some alterations in original) (quoting the record). Consequently, we held that as a matter of law, the lawyer committed "theft" within the meaning of RCW 9A.56.020(1)(a) and violated RPC 8.4(b). *Id.* at 428. Here, the hearing officer found collectively in FOF 16-17, 23-24, 32-35, 57, 59, and 62 that Huynh acted "intentionally and knowingly" in misusing client and investor funds, failed to disclose and intentionally concealed the misuses to Takenaka and Rounds, failed to provide $180,000 of the $200,000

36

McGrew loan proceeds to Pham, delayed partial loan repayment to McGrew, and failed to repay the remaining $70,000 of the loan funds to McGrew. DP at 7, 9-10, 12, 16, 17. FOF 17, 32, 34, 57, 59, and 62 are unchallenged, and therefore verities, and as explained above, the remaining findings are supported by substantial evidence. *Marshall*, 160 Wn.2d at 330. Thus, the findings show that Huynh acted with the intent to deprive and committed theft. Huynh need not be charged or convicted of a crime for a hearing officer to so conclude.

Fourth, Huynh argues the Green Sky Productions operating agreement authorized him to use the Takenaka/Rounds investment funds for purposes unrelated to Green Sky Productions. But the hearing officer rejected Huynh's claim that the operating agreement permitted this, as demonstrated by FOF 26 and 28-33, because the evidence shows otherwise. DP at 10-12; *see also supra* note 5. FOF 26, 31, and 32 are unchallenged, and the remaining findings, as explained above, are supported by substantial evidence. "We will not overturn findings based simply on an alternative explanation or versions of the facts previously rejected by the hearing officer and Board." *Marshall*, 160 Wn.2d at 331.

Huynh's arguments regarding these conclusions of law are unavailing. Thus, we hold that the findings support the hearing officer's conclusions in COL 71, 73, and 78 that Huynh committed theft and violated RPC 8.4(b).[6]

### 3. Conclusions Related to Count 5 (False Representation)

COL 72: The hearing officer concluded in COL 72 that Huynh "executed the Full Reconveyance Deed falsely stating that Takenaka and Rounds had made a written request to reconvey, in violation of RPC 8.4(b) (by committing the crime of false representation concerning title as defined in RCW 9.38.020), RPC 8.4(c), RPC 8.4(i), and RPC 8.4(n) as charged in Count 5." DP at 19. RCW 9.38.020 states that it is a gross misdemeanor for an individual to "maliciously *or* fraudulently execute or file for record any instrument, or put forward any claim, by which the right or title of another to any real or personal property is, or purports to be transferred, encumbered or clouded." (Emphasis added.) Huynh contends that the hearing officer failed to state "the mens rea of *maliciously* or *fraudulently*." Appellant's Br. at 61. However, the hearing officer found in FOF 24 that Huynh "intentionally and *fraudulently* executed the Takenaka/Rounds full reconveyance deed," and, as

---

[6] Huynh also asserts that the hearing officer's conclusions at COL 71 and 78 regarding theft and at COL 70 and 77 regarding RPC 1.8(a) (business transactions) are contradictory because "this means that a 'reasonable attorney-client business transaction' absurdly also encompasses theft." Appellant's Br. at 55-56. But the business transactions were not reasonable, as the hearing officer concluded they violated RPC 1.8(a) as supported by FOF 2, 4-7, 10-14, 37-41, 56, and 64. DP at 4-7, 13, 15-17. Huynh failed to cite to any credible evidence that Pham agreed that Huynh was entitled to use the loan proceeds for his own purposes. Thus, we find the hearing officer's conclusions are logically compatible with one another.

explained above, that finding is supported by substantial evidence. DP at 10 (emphasis added). In addition, while Huynh cites his own testimony to assert that he told Guidry not to record the reconveyance deed until Takenaka and Rounds got paid, the hearing officer found that part of Huynh's testimony not credible at FOF 25, and Huynh did not assign error to that finding. *Id*. Huynh also alleges that he did not receive any financial benefit by executing the deed, but RCW 9.38.020 does not require acquiring financial benefit to constitute false representation.[7] We affirm the hearing officer's conclusion.

### 4.     Conclusions Related to Count 7 (False Accounting)

COL 74: The hearing officer concluded in COL 74 that Huynh "provided Takenaka and Rounds with a false accounting of their $445,000 investment, in violation of RPC 8.4(c) as charged in Count 7." DP at 19. RPC 8.4(c) states that "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit *or* misrepresentation." (Emphasis added.) Huynh argues that based on *In re Disciplinary Proceeding Against Dann*, 136 Wn.2d 67, 77, 960 P.2d 416 (1998), "the question is whether the attorney lied," and he did not lie. Appellant's Br. at 66-67. But it is reasonable to conclude that providing a false accounting is a form of lying. *See, e.g.*, *Poole*, 156 Wn.2d at 210-11 (backdating

---

[7] Huynh does not appear to challenge any of the other violations to the RPCs contained in COL 72.

invoice constitutes lying); *Dann*, 136 Wn.2d at 77-78 (initial-switching on client matters constitutes lying). In addition, Huynh claims Takenaka and Rounds were not entitled to such accounting. But the reason Huynh violated RPC 8.4(c) is not because he denied Takenaka and Rounds of the accounting; it is because he provided a false one. The hearing officer found at FOF 31-34 that Takenaka requested from Huynh an accounting of how the investment funds had been spent, and despite the agreement to use investment funds for purposes only related to Green Sky Productions, Huynh disbursed investment funds to unrelated sources and failed to disclose such disbursements on the accounting. DP at 11-12. FOF 31-32 and 34 are unchallenged, and therefore verities, *Marshall*, 160 Wn.2d at 330, and FOF 33, as explained above, is supported by substantial evidence. These findings are sufficient to support the conclusion that Huynh made misrepresentations and the accounting was false, thus violating RPC 8.4(c).

### 5.     *Conclusions Related to Counts 8 and 9 (Conflicts of Interest)*

COL 75: The hearing officer concluded in COL 75 that Huynh "represented McGrew in the loan transaction in which another client, Pham, was directly adverse, in violation of RPC 1.7(a)(1) as charged in Count 8." DP at 19. RPC 1.7(a)(1) states that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest," which exists if "the representation of one client will be directly adverse to another client." Huynh argues that he was not McGrew's lawyer and at

the time he was engaging in the loan transaction with McGrew, he did not represent Pham. But as the hearing officer found in FOF 60-61, and as supported by substantial evidence, explained above, Huynh simultaneously represented McGrew and Pham, knowing their interests were adverse in the McGrew loan. DP at 16-17. We affirm the hearing officer's conclusion in COL 75.

COL 76: The hearing officer concluded in COL 76 that Huynh "represented Pham in the 606 Post Avenue Litigation when there was a significant risk that the representation would be materially limited by [Huynh]'s responsibilities to McGrew or by [Huynh]'s personal interest in using the property as security and a source of repayment for the McGrew loan," which violated "RPC 1.7(a)(2) as charged in Count 9." DP at 19. RPC 1.7(a)(2) states that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest," which exists if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." Huynh argues he did not have a "personal interest" in Pham's property, but in FOF 44-56 and 60-61, the hearing officer found just that: Huynh had a personal interest in using Pham's 606 Post Avenue property as security and a source of repayment for the McGrew loan, as supported by substantial evidence explained above. DP at 14-17. As explained in COL 75, Huynh also had an attorney-client relationship with McGrew in the loan

transaction, and these conflicting interests created a risk of materially limiting Huynh's representation of Pham. DP at 19; *see also* 3 VRP at 374-75, 442-43. Thus, we uphold the hearing officer's conclusion in COL 76.

In sum, all of Huynh's challenges to the conclusions of law fail because he has not shown that the challenges are unsupported by the findings of fact. *Behrman*, 165 Wn.2d at 422 (citing *Marshall*, 160 Wn.2d at 330). We therefore uphold all of the hearing officer's conclusions of law.

C.      Statutory Defense to Theft

Huynh argues that his right to procedural due process was violated because he was not able to present a statutory defense to theft under RCW 9A.56.020(2)(a). "We review alleged due process violations de novo." *In re Disciplinary Proc. Against Starczewski*, 177 Wn.2d 771, 782, 306 P.3d 905 (2013) (citing *In re Disciplinary Proc. Against King*, 168 Wn.2d 888, 899, 232 P.3d 1095 (2010)). Huynh was charged with violating RPC 8.4(b) by committing theft as defined by RCW 9A.56.020 in counts 3, 6, and 11, which correspond with the hearing officer's conclusions in COL 73 and 78. DP at 2-3, 19-20. RCW 9A.56.020(2)(a) sets out a statutory defense to theft, where "[t]he property or service was appropriated openly and avowedly under a claim of title made in good faith, even though the claim be untenable."

Huynh raises for the first time on appeal that he was deprived of the

opportunity to raise a defense to theft under this statute. *See* Appellant's Reply Br. at 35-37 (no dispute argument is being raised for first time); *see also* AR at 292 (briefing asserting course of performance defense, which was rejected by hearing officer, but not raising defense under RCW 9A.56.020(2)(a)). In a disciplinary proceeding, a lawyer who fails to raise an issue before the Board waives that issue when there is "strong evidence" of such a waiver. *See In re Disciplinary Proc. Against Vetter*, 104 Wn.2d 779, 781, 711 P.2d 284 (1985). In *Vetter*, we held that a waiver was equivocal when the lawyer explicitly stated in writing to the Board "that he did not wish 'to challenge *at this stage* the conclusion as to the use of Bar counsel in the proceeding.'" *Id.* at 780-81. In other words, there was not strong evidence of a waiver because the lawyer reserved the issue for appeal, and only this court, not the Board, had binding authority on the question. *Id.* at 781. Here, however, Huynh made no indication that he was reserving for appeal the issue of whether his procedural due process was violated by being unable to present a defense under the theft statute, and the Board does have authority to resolve procedural due process issues. *Cf. In re Disciplinary Proc. Against Preszler*, 169 Wn.2d 1, 14, 232 P.3d 1118 (2010) (Board remanded matter to new hearing officer due to unfair considerations by initial hearing officer). Thus, we find that because Huynh failed to raise an argument for a statutory defense to theft under RCW 9A.56.020(2)(a) before the Board, Huynh

waived his opportunity to present such a defense and we decline to consider the issue further.[8]

### D.     Disbarment

Last, we must determine whether the Board's recommended sanction of disbarment is justified in this case. "A unanimous board decision will be upheld in the absence of a clear reason for departure." *Whitt*, 149 Wn.2d at 717 (citing *In re Disciplinary Proc. Against Kuvara*, 149 Wn.2d 237, 258-59, 66 P.3d 1057 (2003)). We affirm the Board's unanimous decision to disbar Huynh. As explained above, Huynh misappropriated client and investor funds, attempted to conceal the thefts, and engaged in other intentional conduct involving dishonesty absent extraordinary circumstances to mitigate his serious misconduct.

---

[8] Huynh raises several other claims, including that the complaint violates due process and fails to comply with the Rules for Enforcement of Lawyer Conduct (ELC) because it purportedly failed to put Huynh on notice as to why certain actions resulted in a violation. Due process requires only that the respondent lawyer "'be notified of clear and specific charges and . . . be afforded an opportunity to anticipate, prepare, and present a defense." *Marshall*, 160 Wn.2d at 340 (alteration in original) (quoting *In re Disciplinary Proc. Against Romero*, 152 Wn.2d 124, 136-37, 94 P.3d 939 (2004)). ELC 10.3(a)(3) requires only that the complaint "state the respondent's acts or omissions in sufficient detail to inform the respondent of the nature of the allegations of misconduct." There is no requirement that every fact, specific element, or pertinent legal theory be pleaded in the complaint to justify the reason for the charges. In addition, Huynh asserts that the hearing officer abused his discretion by sustaining ODC's hearsay objection regarding statements by Lam that allegedly authorized Huynh to use the Takenaka and Rounds loan proceeds belonging to Pham. But a hearing officer has the authority to reject witness testimony when drawing conclusions regarding intent, *In re Disciplinary Proc. Against Ferguson*, 170 Wn.2d 916, 934, 246 P.3d 1236 (2011), and a "reasonably prudent" lawyer would not rely on a nonclient's oral statement to confirm a lawyer has permission to use client funds for the lawyer's own purposes, ELC 10.14(d)(1). We reject such assertions by Huynh.

The American Bar Association's (ABA) *Standards for Imposing Lawyer Sanctions* govern bar discipline cases in Washington. *Marshall*, 160 Wn.2d at 342 (citing ABA, STANDARDS FOR IMPOSING LAWYER SANCTIONS (1991 & Supp. 1992)); *see also* ABA, ANNOTATED STANDARDS FOR IMPOSING LAWYER SANCTIONS (2d ed. 2019) (ABA STANDARDS). In applying the ABA *Standards*, we evaluate whether the Board appropriately determined the presumptive sanction by considering "(1) the ethical duties violated, (2) the lawyer's mental state, and (3) the actual or potential injury caused by the lawyer's misconduct." *Marshall*, 160 Wn.2d at 342. Next, we consider any relevant aggravating or mitigating circumstances. *Id.* After that, we consider whether the Board's recommended sanction is proportionate to the misconduct. *Kuvara*, 149 Wn.2d at 257-58.

There are three ABA Standards relevant to the ethical duties Huynh violated. First, Standard 4.11—which states that disbarment is appropriate "when a lawyer knowingly converts client property and causes injury or potential injury to a client"—applies to Huynh's conversions of client property. ABA STANDARDS at 145. Huynh "knowingly converted client funds and caused injury to Pham," as reflected by counts 3 and 11. DP at 20-22.

Second, Standard 4.31—which states that disbarment is appropriate when a lawyer, without the client's informed consent, fails to avoid conflicts of interest—applies to Huynh's conflicts of interest. ABA STANDARDS at 172. Huynh entered into a business transaction with Pham with the intent to benefit himself while knowing his interests were adverse to Pham's under counts 2 and 10, simultaneously represented McGrew and Pham while knowing their interests were adverse under count 8, and represented Pham in the 606 Post Avenue litigation knowing his interests were adverse to Pham's under count 9.

Third, Standard 5.11—which states that disbarment is appropriate when a lawyer engages in "serious criminal conduct," for example, in theft, or "in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation"—applies to Huynh's criminal and dishonest conduct. ABA STANDARDS at 238. For the purposes of the question of disbarment, Huynh committed the crime of theft by appropriating Pham's property under counts 3 and 11; and he acted dishonestly and fraudulently in executing the false reconveyance deed under count 5, using the Takenaka and Rounds investment funds for unauthorized purposes under count 6 and providing Takenaka and Rounds a false accounting under count 7. The hearing officer also found that Huynh intended to use the funds for these unsanctioned purposes and/or his

conduct was knowing with respect to all sustained counts, and that Huynh caused injury, serious injury, or potentially serious injury to clients and third parties. Thus, the ethical duties violated, Huynh's mental state, and the actual or potential injury he caused support a presumptive sanction of disbarment. *Marshall*, 160 Wn.2d at 342.

Furthermore, the relevant aggravating circumstances far outweigh the single mitigating circumstance. The hearing officer found three aggravating factors: (1) dishonest or selfish motive, (2) multiple offenses, and (3) substantial experience in the practice of law. The hearing officer found only one mitigating factor: absence of a disciplinary record. The lack of extraordinary circumstances to mitigate Huynh's serious misconduct weighs in favor of disbarment.

With respect to the proportionality of the Board's recommended sanction to the misconduct, we consider "the misconduct found, the presence of aggravating factors, the existence of prior discipline, and the lawyer's culpability." *In re Disciplinary Proc. Against Conteh*, 175 Wn.2d 134, 152-53, 284 P.3d 724 (2012). We compare the instant case with "'similarly situated cases in which the same sanction was approved or disapproved.'" *In re Disciplinary Proc. Against VanDerbeek*, 153 Wn.2d 64, 97, 101 P.3d 88 (2004) (quoting *In re Disciplinary Proc. Against Miller*, 149 Wn.2d 262, 285, 66 P.3d 1069 (2003)). "The attorney facing discipline 'bears the burden of bringing cases to the court's attention that

47

demonstrate the disproportionality of the sanction imposed.'" *In re Disciplinary Proc. Against Cramer*, 168 Wn.2d 220, 240, 225 P.3d 881 (2010) (quoting *In re Disciplinary Proc. Against Cohen*, 150 Wn.2d 744, 763, 82 P.3d 224 (2004)); *see also VanDerBeek*, 153 Wn.2d at 97. Huynh did not meet his burden as he failed to make a disproportionality argument or cite to comparable cases. *See In re Disciplinary Proc. Against Kagele*, 149 Wn.2d 793, 821, 72 P.3d 1067 (2003). "In light of this court's 'strong policy against client fund violations,' disbarment is the only acceptable sanction here." *In re Disciplinary Proc. Against Fossedal*, 189 Wn.2d 222, 241, 399 P.3d 1169 (2017) (quoting *In re Disciplinary Proc. Against Rentel*, 107 Wn.2d 276, 281, 729 P.2d 615 (1986)). As a result, we adopt the Board's unanimous recommendation to disbar Huynh.

## CONCLUSION

Huynh violated numerous rules against mishandling client funds and misrepresenting those actions. The evidence against Huynh is voluminous and well documented, and he demonstrates no mitigating factors for his behavior. Consequently, this is a case where the most serious disciplinary sanction is not only called for but, frankly, demanded by the record. Therefore, we affirm the hearing officer's findings of fact and conclusions of law, reject Huynh's due process claims, and adopt the Board's recommendation to disbar Huynh.

Montoya-Lewis, J.

WE CONCUR:

González, C.J.

Stephens, J.

Johnson, J.

Gordon McCloud, J.

Madsen, J.

Yu, J.

Owens, J.

Whitener, J.